Royce **GRAFF**, Debra Lynn Graff,
Bobby Hausmon and Betty
Hausmon, Petitioners,

v.

Brett **BEARD** and Dorothy
Beard, Respondents.

No. D–0756.

Supreme Court of Texas.

May 19, 1993.

Rehearing Overruled Sept. 10, 1993.

Dissenting Opinion of Justice
Gammage Sept. 10, 1993.

Alan J. Couture, Thomas F. Nye, Corpus Christi, Cathy Sheehan, Kerby A. Johnson, George G. Brin, San Antonio, for petitioners.

Catherine M. Stone, Jim Perkins, San Antonio, for respondents.

**Opinion**

CORNYN, Justice.

We are asked in this case to impose a common-law duty on a social host who makes alcohol available to an intoxicated adult guest who the host knows will be driving. For the reasons given below, we decline to do so. Accordingly, we reverse the judgment of the court of appeals and render a take-nothing judgment.

Houston Moos consumed alcohol at a party hosted by the Graffs and Hausmons, and allegedly left in his vehicle in an intoxicated condition. En route from the party, Moos collided with a motorcycle, injuring Brett Beard. Beard sued both Moos and his hosts for his injuries. The trial court ultimately dismissed Beard's claims against the hosts for failure to state a cause of action. An en banc divided court of appeals reversed the trial court's judgment and remanded the case, holding for the first time in Texas jurisprudence that social hosts may be liable to third parties for the acts of their intoxicated adult guests. 801 S.W.2d 158.

Under the court of appeals' standard, a social host violates a legal duty to third parties when the host makes an alcoholic beverage available to an adult guest who the host knows is intoxicated and will be driving. *Id.* In practical effect, this duty is twofold. The first aspect of the host's duty is to prevent guests who will be driving from becoming intoxicated. If the host fails to do so, however, a second aspect of the duty comes into play—the host must prevent the intoxicated guest from driving.

The legislatures in most states, including Texas,[1] have enacted dram shop laws that impose a statutory duty to third parties on commercial providers under specified circumstances. We have recently held that when the legislature enacted the Texas dram shop statute it also imposed a duty on the provider that extends to the patron himself. *Smith v. Sewell,* 858 S.W.2d 350 (Tex.1993). Because the dram shop statute applies only to commercial providers, however, it does not govern the duty asserted in this case.

We think it significant in appraising Beard's request to recognize common-law social host liability that the legislature has considered and declined to create such a duty. *See* Conf.Com.Rep. on H.B. 1652, 70th Leg. (1987). A version of the bill that eventually became our dram shop statute provided for social host liability. Although that version passed the Senate, the House rejected it. The Senate–House conference committee deleted social host liability from the bill the legislature eventually enacted. *Id.*

The highest courts in only four states have done what we are asked to do today: judicially impose a duty to third parties on social hosts who make alcohol available to adult guests.[2] *See McGuiggan v. New England Tel. & Tel. Co.,* 398 Mass. 152, 496 N.E.2d 141 (1986); *Clark v. Mincks,* 364 N.W.2d 226 (Iowa 1985); *Kelly v. Gwinnell,* 96 N.J. 538, 476 A.2d 1219 (1984); *Coulter v. Superior Court of San Mateo County,* 21 Cal.3d 144, 145 Cal.Rptr. 534, 577 P.2d 669 (1978). In two of these states, California and Iowa, the legislatures subsequently abrogated the judicially-created duty. CAL.CIV.CODE § 1714 (West 1993); IOWA CODE § 123.49 (West 1992). Neither of the two remaining jurisdictions, Massachusetts and New Jersey, had dram shop statutes when their courts acted. Rather, their courts first imposed a common-law duty to third parties on commercial establishments and then extended the duty to social hosts. *Compare Soronen v. Olde Milford Inn, Inc.,* 46 N.J. 582, 218 A.2d 630 (1966) and *Cimino v. Milford Keg, Inc.,* 385 Mass. 323, 431 N.E.2d 920 (1982) *with Kelly,* 476 A.2d at 1224 and *McGuiggan,* 496 N.E.2d at 146.

■ It is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1991). Historically, the law recognized no common-law duty to third parties on the part of a provider of alcohol—the rationale being that the consumption of alcohol, rather than the provision of it, proximately caused the injury. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 309 (Tex.1987). In *El Chico* this court created a common-law duty to injured third parties on the part of commercial providers, but that duty was almost simultaneously superseded by the legislature's enactment of the dram shop statute. The statute became the *exclusive* basis for the civil liability of commercial providers of alcohol. TEX. ALCO.BEV.CODE § 2.03 (Supp.1993). The statutory duty established by the legislature also placed a less onerous burden on commercial providers and a correspondingly higher burden of proof on injured parties than the common-law duty created by the court: vendors were made legally accountable only when it was apparent at the time the patron was served that the patron was "obviously intoxicated to the extent that he

---

1. *See* Jacob R. Pritcher, Jr., *Is it Time to Turn Out the Lights? Social Host Liability Extended to Third Persons Injured by Intoxicated Adult Guests: Beard v. Graff, 801 S.W.2d 158 (Tex. App.—San Antonio 1990, writ granted),* 22 TEX. TECH L.REV. 903, 904 (1991); TEX. ALCO.BEV.CODE §§ 2.01–2.03 (Supp.1993).

2. The majority of cases cited by JUSTICE GAMMAGE address only liability imposed on adults for the acts of intoxicated minors. *E.g., Wiener v. Gamma Phi Chapter of Alph Tau Omega Fraternity,* 258 Or. 632, 485 P.2d 18 (1971); *Soronsen v. Jarvis,* 350 N.W.2d 108 (Wis.1984). Provision of alcohol to minors is not involved in this case.

The other cases cited by JUSTICE GAMMAGE are also inapposite. For example, one court mentions a duty owed to adults, but does not actually impose that duty. *Divecchio v. Mead Corp.,* 184 Ga.App. 447, 361 S.E.2d 850 (1987). Another case does not concern the duty owed to third parties, but rather the duty owed directly to guests. *Langle v. Kurkul,* 146 Vt. 513, 510 A.2d 1301 (1986).

presented a clear danger to himself and others." TEX.ALCO.BEV.CODE § 2.02 (Supp. 1993). It is against this backdrop that we consider whether a common-law duty for social hosts should be recognized in Texas.

■ Deciding whether to impose a new common-law duty involves complex considerations of public policy. We have said that these considerations include " 'social, economic, and political questions,' and their application to the particular facts at hand." *Mitchell v. Missouri–Kansas–Texas R.R. Co.*, 786 S.W.2d 659, 662 (Tex.1990) (quoting 1 *Texas Torts and Remedies* § 1.03[2] (1989)). Among other factors, we consider the extent of the risk involved, "the foreseeability and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Greater Houston Transp. Co.*, 801 S.W.2d at 525. We have also emphasized other factors. For example, questions of duty have turned on whether one party has superior knowledge of the risk, and whether a right to control the actor whose conduct precipitated the harm exists. *See e.g., Seagrams v. McGuire*, 814 S.W.2d 385 (Tex.1991) (declining to recognize a legal duty of an alcohol manufacturer to warn consumers against danger of alcoholism because the risk is common knowledge); *Greater Houston Transp. Co.*, 801 S.W.2d at 525 (*citing Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1984); RESTATEMENT (SECOND) OF TORTS § 315 (1965) (noting that no general duty exists to control the conduct of others)).

Following our decisions in *Seagrams* and *Otis Engineering Corp.*, we deem it appropriate to focus on two tacit assumptions underlying the holding of the court of appeals: that the social host can reasonably know of the guest's alcohol consumption and possible intoxication, and possesses the right to control the conduct of the guest. Under Texas law, in the absence of a relationship between the parties giving rise to

the right of control, one person is under no legal duty to control the conduct of another, even if there exists the practical ability to do so. *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1984); *Greater Houston Transp. Co.*, 801 S.W.2d at 525; *see also* W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 56 (5th ed. Supp.1988). For example, in *Otis Engineering Corp.* we held that an employer breached a duty of care to the public when he directed an intoxicated employee to drive home and the employee caused a fatal car crash. While we noted that there is no general duty to control the conduct of another, we recognized a duty in that instance because of the employer's authority over the employee. 668 S.W.2d at 309. As we later explained in *Greater Houston Transportation Co.*, our decision in *Otis* was premised on "the employer's *negligent exercise of control* over the employee," rather than on a general duty to prevent intoxicated individuals from driving. 801 S.W.2d at 526 (emphasis in original).

Instead of focusing on the host's right of control over the guest, the court of appeals conditioned a social host's duty on the host's "exclusive control" of the alcohol supply. 801 S.W.2d at 163. The court defined "exclusive control," however, as nothing more than a degree of control "greater than that of the guest user." *Id.* Under the court's definition, at a barbecue, a wedding reception, a back-yard picnic, a pachanga, a Bar Mitzvah—or a variety of other common social settings—the host would always have exclusive control over the alcohol supply because the host chooses whether alcohol will be provided and the manner in which it will be provided. The duty imposed by the court of appeals would apparently attach in any social setting in which alcohol is available regardless of the host's right to control the guest. Thus, as a practical matter, the host has but one choice—whether to make alcohol available to guests at all.[3]

---

**3.** At oral argument Beard's counsel contended that social host liability could attach even if the host did not make alcoholic beverages available

to guests. When the guest himself brings alcoholic beverages on the host's premises, Beard argues, a fact question is presented under the

But should the host venture to make alcohol available to adult guests, the court of appeals' standard would allow the host to avoid liability by cutting off the guest's access to alcohol at some point before the guest becomes intoxicated. Implicit in that standard is the assumption that the reasonably careful host can accurately determine how much alcohol guests have consumed and when they have approached their limit. We believe, though, that it is far from clear that a social host can reliably recognize a guest's level of intoxication. First, it is unlikely that a host can be expected to know how much alcohol, if any, a guest has consumed before the guest arrives on the host's premises. Second, in many social settings, the total number of guests present may practically inhibit the host from discovering a guest's approaching intoxication. Third, the condition may be apparent in some people but certainly not in all. The point at which intoxication is reached varies from person to person, as do the signs of intoxication. One national study, for instance, found that of the drivers with a blood alcohol concentration above 0.10%, the legal limit for driving in many states,[4] only one half actually exhibited signs of intoxication. National Highway Traffic Safety Administration, *Alcohol and Traffic Safety 1984: A Review of the State of the Knowledge* 13 (1984). The guest, on the other hand, is in a far better position to know the amount of alcohol he has consumed, his state of sobriety, and the consequential risk he poses to the public.

This brings us to the second aspect of the duty implicit in the court of appeals' standard: that should the guest become intoxicated, the host must prevent the guest from driving. Unlike the court of appeals, however, we cannot assume that guests will respond to a host's attempts, verbal or physical, to prevent the guests from driving. Nor is it clear to us precisely what affirmative actions would discharge the host's duty under the court of appeals' standard. Would a simple request not to drive suffice? Or is more required? Is the host required to physically restrain the guests, take their car keys, or disable their vehicles? The problems inherent in this aspect of the court of appeals' holding are obvious.[5] The implications of these unaddressed questions demonstrate the frail foundation upon which the court of appeals has constructed social host liability.

Ideally, guests will drink responsibly, and hosts will monitor their social functions to reduce the likelihood of intoxication. Once a guest becomes impaired by alcohol to the point at which he becomes a threat to himself and others, we would hope that the host can persuade the guest to take public transportation, stay on the premises, or be transported home by an unimpaired driver. But we know that too often reality conflicts with ideal behavior. And, given the ultimate power of guests to control their own alcohol consumption and the absence of any legal right of the host to control the guest, we find the arguments for shifting legal responsibility from the guest to the host, who merely makes alcohol available at social gatherings, unconvincing. As the common law has long recognized, the imbiber maintains the ultimate power and thus the obligation to control his

court of appeals' standard: "The beauty of the decision is that they have used the term exclusive control and you have for the jury a determination whether they have greater control than their guests. They ultimately open the door and let someone walk in with liquor...."

4. *E.g.*, Tex.Rev.Civ.Stat.Ann. art. 6701*l*–1(a)(2)(B) (Supp.1993).

5. When these issues were raised in argument, Beard's counsel responded:

COUNSEL: But I think that the question is if we are to utilize, for example, the common-law duty concept that was developed in the *Otis Engineering* case the question becomes "what is reasonable under the circumstances." Under the circumstances is it reasonable for me to attempt to hold back a 250–pound football player who is intoxicated from leaving my party? Perhaps not. Is it reasonable for me to attempt to hold back a 100–pound secretary who is trying to leave my party. Do I proceed to the point of false imprisonment? Those are questions that are, in fact, best suited for jury determination.

COURT: In all instances this will be ... there will be no summary judgments under this standard?

COUNSEL: I doubt it. There will always be fact questions.

own behavior: to decide to drink or not to drink, to drive or not to drive. We therefore conclude that the common law's focus should remain on the drinker as the person primarily responsible for his own behavior and best able to avoid the foreseeable risks of that behavior.

We accordingly reverse the judgment of the court of appeals and render judgment that Beard take nothing.

Dissenting opinion by GAMMAGE, J., joined by DOGGETT, J.

SPECTOR, J., not sitting.

Sept. 10, 1993.

GAMMAGE, Justice, dissenting.

The prior dissenting opinion is withdrawn and the following substituted.

I respectfully dissent. The majority errs in holding that the legislature must "create" the duty for social hosts not to send intoxicated guests driving in our streets to maim and kill. Logic, legal experience and this court's own earlier decisions dictate a contrary result. The legislature may enact a statute that creates a duty. But the legislature's failure to act does not "uncreate" an existing duty. A duty created by the common law continues to exist unless and until the legislature changes it, and such an existing common law duty applies to the defendants here.

Consider what earlier relevant Texas cases hold. First and foremost is *El Chico Corp. v. Poole*, 732 S.W.2d 306 (Tex.1987). *Poole* recognizes the common law duty of commercial vendors of alcoholic beverages not to serve patrons alcoholic beverages when the liquor licensee knew or should have known that the patron was intoxicated and was going to drive a motor vehicle. It is true the *Poole* opinion expressly states, "The duty, if any, of one who dispenses or serves liquor gratuitously, in absence of a license or permit, is not involved in this appeal." *Id.* at 309. The court's declining to address a question that was not before it, however, does not mean the common law of Texas as to such "social host" liability may not be reasonably deduced from *Poole*'s language.

The majority fails to acknowledge *Poole*'s rationale that the most important factor in recognizing a duty under the common law of negligence is the foreseeability of the risk; the majority does, however, repeatedly cite *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1991), which did recognize the importance of this rationale in *Poole*. 858 S.W.2d at 919, 920. Probably the most quotable line from *Poole* suggests the foreseeability here is analogous to letting a rattlesnake loose on an unsuspecting public: "The risk and likelihood of injury from serving alcohol to an intoxicated person whom the licensee knows will probably drive a car is as readily foreseen as injury resulting from setting loose a live rattlesnake in a shopping mall." *Poole*, 732 S.W.2d at 311. If we substitute "social host" for "licensee," the statement remains equally true. Moreover, in *Poole*, this court addressed the foreseeability and public policy considerations that numerous accidents, including substantial percentages which were serious or fatal, involved driving while intoxicated. *Id.* When the court invokes this rationale, with an appropriate emphasis on foreseeability of the risk, there remains "no reasonable or logical basis" for limiting the duty to "commercial vendors" and excluding social hosts. *Coulter v. Superior Court*, 21 Cal.3d 144, 145 Cal.Rptr. 534, 537, 577 P.2d 669, 672 (1978). In addressing the victims of DWI, it is clear the *Poole* analysis applies with equal strength to social hosts who engage in such dangerous conduct. Indeed,

it is small comfort to the widow whose husband has been killed in an accident involving an intoxicated driver to learn that the driver received his drinks from a hospitable social host rather than by purchase at a bar. The danger of ultimate harm is as equally foreseeable to the reasonably perceptive host as to the bartender. The danger and risk to the potential victim on the highway is equally as great, regardless of the source of the liquor.

*Id.* 145 Cal.Rptr.2d at 539, 577 P.2d at 674.

Once the court adopted the rationale stated in *Poole*, the clear logical recogni-

tion of the duty in social hosts necessarily followed. *See generally Coulter,* 145 Cal. Rptr. at 538–39, 577 P.2d at 673–74; *Clark v. Mincks,* 364 N.W.2d 226 (Iowa 1985); *McGuiggan v. New England Tel. & Tel. Co.,* 398 Mass. 152, 496 N.E.2d 141, 145–46 (1986); *Kelly v. Gwinnell,* 96 N.J. 538, 476 A.2d 1219, 1222–23 (1984).

The only difference between the commercial vendor and the social host is the relationship to the intoxicated driver. The risk and foreseeability of harm to the general public is the same. Balancing the relationship factor, in determining whether a duty exists, must tip in favor of the public interest. *See Coulter,* 145 Cal.Rptr. at 540, 577 P.2d at 675;[1] *Kelly,* 476 A.2d at 1222–25.[2] The only other relevant Texas case, *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307 (Tex.1983), supports this conclusion. In *Otis Engineering,* the employer, knowing the employee was intoxicated, sent him home knowing he was going to drive while intoxicated. The majority dismisses *Otis Engineering* on the ground it was "the employer's *negligent exercise of control* over the employee" that distinguishes the situation from the social host's position. 858 S.W.2d at 920 [quoting *Greater Houston Transp. Co.,* 801 S.W.2d at 526 (emphasis in original)]. The position of the social host is somewhat different, in that the host is serving alcohol to an intoxicated person knowing he will drive. In *Otis Engineering* the control was over the sending (or driving), whereas for the social host the control is over the furnishing of the intoxi-

cating beverage. In either case the risk is knowingly letting that rattlesnake loose on the public streets and highways.

Quoting and citing *Poole,* this court in *Greater Houston Transportation Co.* set forth the factors for determining whether to impose a duty and thereby recognize a negligence tort action: "the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant," acknowledging "foreseeability of the risk is 'the foremost and dominant consideration.'" *Greater Houston Transp. Co.,* 801 S.W.2d at 525. The majority opinion ignores the risk to an endangered public. Instead of weighing all factors with an appropriate emphasis on this risk and its foreseeability, the majority selects two lesser factors favoring its desired result, and more or less dismisses the rest. Once again, both the legislature and the *Poole* decision have provided the answer. Does the social utility of a host's providing liquor to an obviously intoxicated driver outweigh the foreseeability of risk? No, as both the *Poole* holding and the legislature's enactment of a dram shop act demonstrate. The majority addresses the difficulty of guarding against injury, but it ignores the fact that the injury is a consequence of the intoxication. It is not significantly more difficult for the social host to refuse to serve alcoholic beverages to the intoxicated guest than it is for the bartender to refuse

---

1. Doubtless, the spectre of civil liability may temper the spirit of conviviality at some social occasions, especially when reasonably observant hosts decline to serve further alcoholic beverages to those guests who are obviously intoxicated and perhaps becoming hostile. Nonetheless, in this context, we must surely balance any resulting moderation of hospitality with the serious hazard to the lives, limbs, and property of the public at large, and the great potential for human suffering which attends the presence on the highways of intoxicated drivers.... [W]e need not ignore the appalling, perhaps incalculable, cost of torn and broken lives incident to alcohol abuse, in the area of automobile accidents alone.

2. Whatever the motive behind making alcohol available to those who will subsequently drive,

the provider has a duty to the public not to create foreseeable, unreasonable risks by this activity.... While we recognize the concern that our ruling will interfere with accepted standards of social behavior; will intrude on and somewhat diminish the enjoyment, relaxation, and camaraderie that accompany social gatherings at which alcohol is served; and that such gatherings and social relationships are not simply tangential benefits of a civilized society but are regarded by many as important, we believe that *the added assurance of just compensation to the victims of drunken driving* as well as the added deterrent effect of the rule on such driving outweigh the importance of those other values. (Emphasis added; intervening discussion omitted.)

to sell to the drunken patron. Moreover, when the dram shop law addresses liability in the commercial context, but fails to address social host liability, the duty imposed upon this court to fill the illogical and unjust void in the law is even greater, as a decision expressly recognizing social host liability despite its omission in another state's dram shop act states:

> the injustice of the present jurisprudence places upon this court the imperative duty to rectify that injustice through reevaluation of our current legal precedent.

*Cravens v. Inman*, 223 Ill.App.3d 1059, 166 Ill.Dec. 409, 418, 586 N.E.2d 367, 376 (1991), *appeal dism'd*, — Ill.2d —, 168 Ill.Dec. 19, 589 N.E.2d 133 (1992).

On this question I must address the inconsistent treatment the majority gives authorities from other jurisdictions. I freely admit that different statutes and factual distinctions make difficult any comprehensive analysis of decisions from other states. But what the majority offers is distinctions without a difference and arbitrary declarations rather than legal analysis.

The majority claims that only four states recognized social host liability as a matter of common law. It then suggests that in two of those states, the legislatures "overruled" the court decisions by rapid statutory enactment, suggesting deference to the legislature's inaction. The majority asserts that most cases I cite "address only a duty owed to minors." 858 S.W.2d at 919 n. 2. The other cases, we are told, are "inapposite" because, for example, "one court mentions a duty owed to adults but does not actually impose" it, and another "does not concern the duty owed to third parties, but rather the duty owed directly to guests." *Id.* These supposed "distinctions" make no substantive difference.

It is true that the *McGuiggan* and *Kelly* cases recognized social host liability as part of the common law, holding there is a duty to third parties. It is also true that, to the best of our understanding and research

capabilities, the legislatures in Massachusetts and New Jersey, respectively, have not enacted statutes to overturn those decisions.

It is likewise true that *Coulter* and *Clark v. Mincks* held there was a common law duty on social hosts, and that the legislatures in California and Iowa, respectively, promptly overturned by statute each respective decision.

That two-to-two analysis does not tell the whole story. The majority is wrong when it states the four decisions it chooses to discuss are the "only" ones. The majority dismisses what is perhaps the earliest social host common law duty holding in *Wiener v. Gamma Phi Chapter of Alpha Tau Omega Fraternity*, 258 Or. 632, 485 P.2d 18, 23 (1971), as one of the "only a duty owed to minors" case. The *Gamma Phi Chapter* case did involve intoxication of a minor, but it was immaterial whether the third party who was injured in the accident, and to whom the duty was owed, was injured by a minor or by an adult drunk. In fact, on a foreseeability analysis, it is just as foreseeable that an intoxicated adult driving a vehicle will cause third party injury as it is for an intoxicated minor. If the majority raises this "minor" distinction, it should tell us why it should make a difference and whether it will, or will not, impose third party liability if the intoxicated guest is a minor. A rattlesnake is just as deadly, its bite just as lethal, whether it is a young "adolescent" rattlesnake or an older more mature rattlesnake. The duty to the driver on the highway to not set the venomous snake loose is the same.

In reality, common law social host liability is a non-issue in many jurisdictions because statutes regulating alcoholic beverage distribution either expressly or by (even occasionally strained) judicial construction impose liability on social hosts.[3] But perhaps social host liability encountered in "judicial construction" cases doesn't count.

---

3. *See, e.g., Nehring v. LaCounte*, 219 Mont. 462, 712 P.2d 1329 (1986); Mont.Code Ann. §§ 16-6-305, 27-1-710 (1900); *Walker v. Key*, 101 N.M. 631, 686 P.2d 973 (App.1984); N.M.Stat.Ann. § 41-11-1 (Michie 1991).

Another case the majority makes a rather disingenuous distinction of is *Langle v. Kurkul,* 146 Vt. 513, 510 A.2d 1301, 1306 (1986), wherein the Vermont Supreme Court held there is a common law legal duty "where the social host furnishes alcoholic beverages to one who is visibly intoxicated and it is foreseeable to the host that the guest will thereafter drive an automobile, or, where the social host furnishes alcoholic beverages to a minor." In *Langle* the plurality opinion went out of its way to state as a "holding" that social host liability to injured third parties was adopted as the law, but denied recovery because it declined to "extend" that liability to the injured guest herself. The dissenting justices agreed with the "holding" that social host liability applied to third party injuries, but would also have extended it to the intoxicated guest. A concurring justice urged that since there was no duty to the guest, the "holding" that there was a duty to third parties was "dicta." The majority's so-called distinction here is no more than the position of the lone writing justice on the Vermont court—that it "does not concern the duty owed to third parties, but rather the duty owed directly to guests." 858 S.W.2d at 919 n. 2. The *Langle* opinion states recognition of social host liability as a holding, and all but one of the justices of the Vermont court expressly agreed it is the law, but here this court's majority dismisses the case as "inapposite" and denies it adopts the rule it plainly states. Would a practitioner in Vermont so cavalierly dismiss the opinion? At their own peril, I think.

The majority further ignores as "dicta" *Sutter v. Hutchings,* 254 Ga. 194, 327 S.E.2d 716 (1985), which admittedly involved a sale to a minor by a licensed commercial vendor. The *Sutter* court stated that sale to a minor or a noticeably intoxicated person would create liability. The opinion cited with approval and quoted at length from *Kelly* and *Coulter,* which the majority concedes are third-party social host liability holdings it cannot distinguish. *Sutter,* 327 S.E.2d at 717–18. But the majority denies that the rule laid down by *Sutter* applies equally to adults. When an intermediate Georgia court subsequently applied this holding to a case involving a noticeably intoxicated adult, *Divecchio v. Mead Corp.,* 184 Ga.App. 447, 361 S.E.2d 850, 851 (1987), that state's Supreme Court declined to grant review. Because the *Divecchio* court held causation questions dispositive, the majority asserts it did not "apply" the rule to adults. 858 S.W.2d at 919 n. 2. Once again, by fabricating distinctions that courts from other jurisdictions have found immaterial, the majority here avoids addressing a common law rule contrary to its desired result.

The majority likewise misplaces its rationale of pure deference to the legislature. That inaction on commercial host liability did not demonstrate the legislature's intent that there be none was an express holding in *Poole,* 732 S.W.2d at 314,[4] that applies equally to the legislature's failure to include a social host liability provision in the dram shop law it enacted. Social host liability is appropriate for judicial resolution as part of our organic common law.

The majority attempts leave the impression that pure deference to the legislature—by which I mean refusing to fulfill the court's duty to recognize a common law duty because only the legislature should weigh the factors—is either the position of a majority of states or the trend of deci-

4. In 1977, 1979, and 1983, legislation creating a civil remedy was introduced but never voted on by the legislature as a body or by any committee. Failure to report a bill from committee or inaction by the legislature, however, does not conclusively establish legislative intent. *See Sanchez v. Schindler,* 651 S.W.2d 249, 252 (Tex. 1983). *Accord Ontiveros v. Borak,* 136 Ariz. 500, 512, 667 P.2d 200, 212 (1983) (unable to find expression of intent in absence of legislative action); *Sorensen,* 350 N.W.2d at 112 (non-pas-

sage of dramshop bill not reliable evidence of legislative intent). While failure to enact a bill may arguably be some evidence of intent, other reasons are equally inferable. Lack of time for consideration, opposition by a particular member or committee chair, efforts of special interest groups, or any other unidentified extraneous factor may, standing alone or combined together, act to defeat a legislative proposal regardless

sions. Nothing could be further from the truth.

One of the early cases expressing deference to the legislature rather than recognizing the evolving common law is *Olsen v. Copeland*, 90 Wis.2d 483, 280 N.W.2d 178, 181 (1979), which states that weighing competing interests in whether to impose social host liability was "analysis ... best conducted by the legislature." **The subsequent history of the *Olsen* case itself best illustrates why the majority's holding is wrong.** The Wisconsin Supreme Court expressly overruled the *Olsen* deference to the legislature holding in *Sorensen by Kerscher v. Jarvis*, 119 Wis.2d 627, 350 N.W.2d 108 (1984). In *Sorensen*, the Wisconsin court concluded the legislature's inaction was not evidence of intent, and that it should decide the issue as part of the evolving common law. This is the same *Sorensen* opinion cited in *Poole*.[5] *Sorensen* dealt with commercial vendor liability, but the Wisconsin court subsequently extended its common law liability holding to social hosts in *Koback v. Crook*, 123 Wis.2d 259, 366 N.W.2d 857, 861 (1985), and *Harmann v. Hadley*, 128 Wis.2d 371, 382 N.W.2d 673, 676 (1986). As that court stated in *Harmann*, "We went on to conclude in *Koback* that there was no overriding public policy reason to shield persons who were not commercial vendors from liability when their negligent serving" of liquor violated the standard. *Harmann*, 382 N.W.2d at 675. In a five-to-four decision by the Iowa Supreme Court, in which that court declined to change its position relying on legislative inaction, the dissent expressly points out that Wisconsin changed its position. *Fuhrman v. Total Petroleum, Inc.*, 398 N.W.2d 807, 813 (Iowa 1987) (Schultz, J., dissenting).

Other than *Sorensen*, perhaps the case most strongly rejecting the deference-to-the-legislature position the majority advocates here is the Vermont case, *Langle v. Kurkul*. The Vermont legislature had enacted a dram shop law, but had failed to include social host liability. The Vermont Supreme Court expressly rejected the dram-shop-law preemption argument. *Langle*, 510 A.2d at 1303. The majority here would hold, to the contrary, that the legislature's enactment of a dram shop law almost "simultaneously superseded" the common law principles declared in *Poole*, and because the dram shop law did not address social hosts there should be no social host liability. That is not the position of our sister states. In fact, a host of other jurisdictions have rejected the statutory preemption doctrine. *See, e.g., Lyons v. Nasby*, 770 P.2d 1250, 1253 (Colo.1989); *Largo Corp. v. Crespin*, 727 P.2d 1098, 1107 (Colo.1986);[6] *Kowal v. Hofher*, 181 Conn. 355, 436 A.2d 1, 2 (1980); *Elder v. Fisher*, 247 Ind. 598, 217 N.E.2d 847, 853 (1966); *Klingerman v. SOL Corp.*, 505 A.2d 474, 477 (Me.1986); *Dynarski v. U-Crest Fire Dist.*, 112 Misc.2d 344, 447 N.Y.S.2d 86, 87–88 (1981); *Mason v. Roberts*, 33 Ohio St.2d 29, 294 N.E.2d 884, 887 (1973). And this court, as it did in *Poole*, should again decline to abdicate to a nonexistent statutory preemption.

The majority confuses issues of proof with issues of whether to recognize the tort duty. The majority is concerned that the social host might not be able to persuade or control his intoxicated guest to keep him or her from driving. The host, however, clearly *does* control whether alcohol is being served, and in what quantities and form. The answer to the "duty" question is that the host should not let the driving guest have the alcohol in intoxicating quantities. If the guest becomes inebriated, however, just as with any other dangerous situation one helps create, the host has the duty to make every reasonable effort to keep the dangerously intoxicated guest from driving. If the guest resists those efforts, then there is a question for the factfinder to resolve whether the host's efforts were all that reasonably could be done under the circumstances.

The majority expresses concern that "the reasonably careful host" may not be able

---

of the legislature's collective view of the bill's merits. *Ontiveros; Sorensen.*

**5.** *See* quotation in note 4, *supra.*

**6.** *Crespin* is cited with approval in *Poole*, 732 S.W.2d at 310 n. 1.

to detect when some guests are intoxicated. 858 S.W.2d at 921. If that is so, then the factfinder should have no difficulty determining that the host did not serve them while they were "obviously intoxicated." The majority further asserts, without citation to authority, that the "guest ... is in a far better position to know the amount of alcohol he has consumed" than the host. 858 S.W.2d at 921. This assertion defies common sense, because from personal observation we know that most persons, as they become intoxicated, along with losing their dexterity and responsive mental faculties, gradually become less and less cognizant of how much they've had and how badly intoxicated they are. Even if the host is also intoxicated, as a third party viewing the guest, the host is probably in a better position to evaluate the guest's intoxication. Intoxicated guests *need* someone to tell them not to drive. It bears repeating that, if the guest did not appear intoxicated, the factfinder should have no trouble concluding that the host did not serve alcohol to an obviously intoxicated person.

If circumstances do not permit the social host to adequately monitor and control the quantity of alcoholic beverages a guest consumes, the host still retains absolute control over whether alcoholic beverages should be served at all. Lest there be some fear that recognizing social host liability will impair the celebrity of every backyard barbecue in Texas, it should not, and its effect should be salubrious. Moreover, it should be remembered that the innocent and sober guest en route to the party is entitled to the same legal protection from a drunken and dangerous departing guest as any other member of the driving public.

The majority closes with its expression of hope that hosts will act responsibly even though its opinion insulates them from liability. The majority wants to return to that discredited common law doctrine— "[a]s the common law has long recognized"—that the decision to drink is the only proximate cause of the harm, and it so states in its penultimate paragraph. 858 S.W.2d at 921. The majority seeks to repudiate the principle articulated in *Poole* and stop the evolving common law dead in its tracks. Virtually all jurisdictions have discarded that obsolete "drinker's fault only" rationale and provided meaningful doctrines to protect the public from rattlesnakes in its midst, as this court did in *Poole.*

This court should reach the holding logically compelled by *Poole* and *Otis Engineering* to keep both sets of rattlesnakes— those created by commercial vendors, and those created by social hosts—off our public streets and highways. The drunk who causes the accident is not excused from liability because the social host who intoxicated him is also responsible. All culpable parties should be liable—the social host who knowingly intoxicated the guest and the guest who drunkenly caused the accident. I am persuaded that both should be liable to the extent of their responsibility for the accident. The television commercial says, "Friends don't let friends drive drunk." That is sound public policy. But today the majority says, "Intoxicate your friends and send them out upon the public streets and highways to drive drunk. Don't worry, you won't be liable." That is, in the kindest term I can muster, unsound policy. It is contrary to this court's earlier opinions, contrary to the sound opinions and decisions from other states, and contrary to the public interest recognized and policy declared by those opinions. For these reasons, I dissent.

DOGGETT, J., joins this dissent.

SPECTOR, J., not sitting.