TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00182-CV







Rhonda Vanderwiele, Debbie Barrett and Jimmy Bryant, Individually and


on Behalf of the Estate of James Bryant and Darlene Bryant, Appellants



v.



Llano Trucks, Inc. d/b/a Frank Smith Llano Trucking


and Frank Smith Llano Trucking, Appellees







FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT


NO. 14493A, HONORABLE CLAYTON E. EVANS, JUDGE PRESIDING








 Plaintiffs Rhonda Vanderwiele, Debbie Barrett, and Jimmy Bryant, individually
and on behalf of the estate of James Bryant and Darlene Bryant, appeal from a summary judgment
in favor of defendant Llano Trucks, Inc., operating under the trade name Frank Smith Llano
Trucking ("Llano Trucking"). We will affirm the trial-court judgment.



THE CONTROVERSY


 The summary-judgment record shows that Scott Wayne Carrigan, an employee of
Llano Trucking, and his friend Robert Wayne Franklin drove a truck from the Llano Trucking
terminal in Marble Falls to Houston and back. During the trip Carrigan and Franklin drank beer
and injected themselves intravenously with methamphetamine. After arriving at the Llano
terminal, Carrigan drank one or two beers while he worked on the truck. 

 Frank Smith, owner of Llano Trucking, regularly permitted his employees to drink
beer at the terminal and noticed Carrigan drinking a beer on this occasion. Smith did not know
Carrigan was intoxicated, however, and took no action to control Carrigan's conduct. Carrigan
and Franklin left the terminal in Carrigan's personal automobile to go home to Lampasas. They
stopped in Marble Falls to buy gasoline and two thirty-two-ounce bottles of beer. Carrigan
continued driving toward Lampasas while drinking a bottle of beer. He fell asleep at the wheel
and veered off the highway. He awoke suddenly and attempted to regain control of his car,
swerved across the center line, and struck a motorcycle on which James and Darlene Bryant were
traveling. The Bryants died as a result of massive internal injuries sustained in the collision.

 At 9:35 p.m., the time of the collision, Carrigan had consumed approximately half
of the thirty-two ounces of beer in addition to alcoholic beverages consumed throughout the day. 
Carrigan's blood-alcohol level was tested at 10:55 p.m. Two tests revealed blood-alcohol
concentrations of .1001 and .0987. Based on these tests, plaintiffs' expert witness, a forensic
toxicologist, swore in his affidavit that in his opinion Carrigan was intoxicated when he left the
Llano Trucking terminal.



DISCUSSION AND HOLDINGS


 In their sole point of error, plaintiffs complain the trial court erred in sustaining
Llano Trucking's motion for summary judgment because Llano Trucking owed a duty to the
Bryants and the motoring public to prevent Carrigan from becoming intoxicated on the job and
a duty to prevent his operating his automobile while intoxicated. (1)

 Whether a duty exists is a question of law. Greater Houston Transp. Co v.
Phillips, 801 S.W.2d 523, 525 (Tex. 1990). As a general rule, there is no duty to control the
conduct of another person. Otis Eng'g Corp. v. Clark, 668 S.W.2d 307, 309 (Tex. 1983);
Restatement (Second) of Torts § 315 (1965). However, certain relationships may give rise to a
duty to control the actions of others. For example, "the master-servant relationship may give rise
to a duty on the part of the master to control the conduct of his servants outside of the scope of
employment." Otis Eng'g, 668 S.W.2d at 309. Factors that should be considered in the
imposition of such a duty are: (1) the risk, (2) the foreseeability, (3) the likelihood of injury
weighed against the social utility of the actor's conduct, (4) the magnitude of the burden of
guarding against injury, and (5) the consequences of placing that burden on the employer. Id.;
see also Graff v. Beard, 858 S.W.2d 918, 920 (Tex. 1993) (other factors include whether one
party has superior knowledge of the risk and whether a right to control another's conduct exists).

 Both parties contend the supreme court's decision in Otis Engineering supports
their opposing positions. In Otis Engineering, an employee who was too intoxicated to complete
his shift at a plant was instructed to go home and escorted to the parking lot by his supervisor. 
Thirty minutes later, the employee caused the deaths of two people in an automobile collision. 
The employer moved successfully for summary judgment on the ground that the employer owed
no duty to act in a non-negligent manner. The court of appeals, holding that material issues of
fact existed, reversed summary judgment. The supreme court, affirming the court of appeals,
announced a new standard of conduct: "[W]hen, because of an employee's incapacity, an
employer exercises control over the employee, the employer has a duty to take such action as a
reasonably prudent employer under the same circumstances would take to prevent the employee
from causing an unreasonable risk of harm to others." Otis Eng'g, 668 S.W.2d at 311 (emphasis
added). 

 Llano Trucking argues the summary judgment order in the present cause should
be affirmed under Otis Engineering because Llano Trucking did not know of Carrigan's
intoxication and did not purport by any act to control him. Plaintiffs argue Llano Trucking has
misconstrued Otis Engineering in limiting its scope to instances where the employer is shown to
have exercised some control over the incapacitated employee. Otis Engineering, plaintiffs argue,
merely declares that special relationships may give rise to a duty, such as the duty described in
section 317 of the Restatement (Second) of Torts. See id. at 309. Section 317 provides as
follows:



A master is under a duty to exercise reasonable care so to control his servant while
acting outside the scope of his employment as to prevent him from intentionally
harming others or from so conducting himself as to create an unreasonable risk of
bodily harm to them, if 


(a) the servant

 (i) is upon the premises in possession of the master or upon which the
servant is privileged to enter only as his servant, or

 (ii) is using a chattel of the master, and 


(b) the master

 (i) knows or has reason to know that he has the ability to
control his servant, and

 (ii) knows or should know of the necessity and opportunity for
exercising such control.



Restatement (Second) of Torts § 317 (1965). Because section 317 does not expressly require an
affirmative act of control, plaintiffs argue Llano Trucking may be held liable for its negligent
failure to act as described in Kelsey-Seybold Clinic v. Maclay, 466 S.W.2d 716 (Tex. 1971). In
Maclay, the supreme court, referring to section 317, held that a physician's partnership owed a
duty to its patients to exercise ordinary care to prevent one of its partners from tortiously
interfering with the patient's family relations.



If the partnership received information from which it knew or should have known
that there might be a need to take action, it was under a duty to use reasonable
means at its disposal to prevent any partner or employee from improperly using his
position with the Clinic to work a tortious invasion of legally protected family
interests. This duty relates only to conduct of a partner or employee on the
premises of the Clinic or while purportedly acting as a representative of the Clinic
elsewhere. Failure to exercise ordinary care in discharging that duty would
subject the Clinic to liability for damages proximately caused by its negligence. 
See Restatement [(Second) of Torts § 317 (1965)].



Maclay, 466 S.W.2d at 720 (emphasis added). Thus, under Maclay, a partnership may be liable
for damages if it knew or had reason to know of a partner's tortious conduct and failed to use
ordinary care to prevent its occurrence. 

 Recently, the El Paso Court of Appeals questioned whether Texas has adopted
section 317 of the Restatement and determined that


if Texas recognizes a Section 317 cause of action, it is only in a limited sense that
in order for a duty to arise, the employer must not only have some knowledge of
the employee's condition or incapacity, but must exercise some control or perform
some affirmative act of control over the employee.



DeLuna v. Guynes Printing Co., 884 S.W.2d 206, 210 (Tex. App.--El Paso 1994, writ denied);
see Restatement (Second) of Torts § 317(b) (1965). (2)

 Cases involving an employer's duty to control an incapacitated employee, decided
after Otis Engineering, have consistently held that no liability exists unless the employer performs
an affirmative act of control over the employee. See DeLuna, 884 S.W.2d 206, 210 (Tex.
App.--El Paso 1994, writ denied) (employer had no duty with respect to plaintiff injured as a result
of employee's driving while intoxicated when employee had no history of alcohol abuse, employer
had no knowledge that off-duty employee was drinking beer on or near premises, and employer
took no affirmative action to control employee); J & C Drilling Co. v. Salaiz, 866 S.W.2d 632,
639 (Tex. App.--San Antonio 1993, no writ) (no duty because no evidence that employer
performed an affirmative act to put fatigued employee on public highway); Moore v. Times Herald
Printing Co., 762 S.W.2d 933, 935 (Tex. App.--Dallas 1988, no writ) (no evidence of knowledge
of incapacity, and if incapacity did exist, no evidence of an affirmative act of employer to control
employee's actions); Williams v. Sun Valley Hosp., 723 S.W.2d 783, 787 (Tex. App.--El Paso
1987, writ ref'd n.r.e.) (distinguishing Otis Engineering based on lack of affirmative act of
control); Pinkham v. Apple Computer, 699 S.W.2d 387, 390 (Tex. App.--Fort Worth 1985, writ
ref'd n.r.e.) (no "evidence that Apple ever took any affirmative action to control [its employee]
and therefore the first requirement of Otis standard was not satisfied"). We conclude that Otis
Engineering requires some act on behalf of a employer as a prerequisite to establishing a duty
under the common law in the present circumstances.

 Because it is undisputed in the summary-judgment record that Smith did not know
Carrigan was intoxicated and did not attempt to control his conduct before the collision, we
conclude Llano Trucking owed no common-law duty to plaintiffs.

 Plaintiffs argue section 392.5 of the Federal Motor Carrier Safety Regulations
imposed a duty on Llano Trucking not to allow Carrigan to consume alcohol before driving. 
Federal Motor Carrier Safety Regulations, 49 C.F.R. § 392.5 (1990). (3) At the time of the
collision, section 392.5 provided as follows:



(a) No person shall--

 (1) Consume an intoxicating beverage, regardless of its alcoholic
content, or be under the influence of an intoxicating beverage,
within 4 hours before going on duty or operating, or having
physical control of, a motor vehicle;


 . . . .


(b) No motor carrier shall require or permit a driver to--

 (1) Violate any provision of paragraph (a) of this section; or

 (2) Be on duty or operate a motor vehicle if, by the driver's
general appearance or conduct or by other substantiating
evidence, the driver appears to have consumed an
intoxicating beverage within the preceding 4 hours.



Id. (emphasis added). Plaintiffs assert that because the regulation did not specify "commercial"
vehicles, the Department of Transportation intended that trucking companies must prevent their
drivers from operating even their personal automobiles while under the influence of alcohol. (4)

 Llano Trucking points out, however, that a "driver" is defined as "any person who
operates any commercial motor vehicle." Id. § 390.5(c). Furthermore, private transportation was
expressly excepted from the regulations:



(f) Exceptions. Unless otherwise specifically provided, the rules in this
subchapter do not apply to--

 . . . .


 (3) The occasional transportation of personal property by individuals
not for compensation nor in the furtherance of a commercial
enterprise;


 . . . .


 (6) The private transportation of passengers.



Id. § 390.3(f)(3), (6).

 We conclude the Federal Motor Carrier Safety Regulations did not impose upon
Llano Trucking a statutory duty to prevent Carrigan from driving his personal automobile after
drinking alcoholic beverages. 

 Because Llano Trucking had no common-law or statutory duty to prevent Carrigan
from driving under the circumstances, we overrule plaintiffs' point of error and affirm the
summary judgment. 



 

 John Powers, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: August 30, 1995

Do Not Publish
1.   The elements for appellate review of a motion for summary judgment are well
established: (1) The movant for summary judgment has the burden of showing that no genuine
issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in
deciding whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference
must be indulged in favor of the nonmovant and any doubts resolved in its favor. Nixon v.
Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985).
2.   Otis Engineering, 668 S.W.2d at 307, and Maclay, 466 S.W.2d at 716, are the only two
supreme court decisions that refer to section 317 as authority. Although Otis Engineering
mentioned only the on-premises and chattel elements--subsection (a) of 317--and did not discuss
subsection (b) regarding what the employer knew or should have known of the necessity and
opportunity to control its employee, the court reversed summary judgment based on the
employer's affirmative act of sending the employee home. Otis Eng'g, 668 S.W.2d at 309-11. 
 Unlike Otis Engineering, the facts of the present case do not include knowledge of
intoxication or an affirmative act of control. Although the Otis Engineering opinion addressed
only the situation in which an employer exercised control, the court also expressed reluctance
to expand the concept of duty to instances of nonfeasance:



Traditional tort analysis has long drawn a distinction between action and inaction
in defining the scope of duty. Dean Prosser attributes this distinction to the early
common law courts' preoccupation with "more flagrant forms of misbehavior
[rather than] with one who merely did nothing, even though another might suffer
harm because of his omission to act." [William L. Prosser, The Law of Torts §
56, at 338 (4th ed. 1971)]. However, although courts have been slow to
recognize liability for nonfeasance, "[d]uring the last century, liability for
`nonfeasance' has been extended still further to a limited group of relations, in
which custom, public sentiment and views of social policy have led the court to
find a duty of affirmative action." Id. at 339. Be that as it may, we do not view
this as a case of employer nonfeasance.


668 S.W.2d at 309-10. An expansion of duty to include nonfeasance based on such
considerations is for the supreme court in the first instance, not an intermediate appellate
court.
3. Texas has adopted "[a]ll regulations contained in 49 Code of Federal Regulations, Parts
390-393." 16 Tex. Admin. Code § 5.171(11) (1995).
4. We note that the 1995 version of section 392.5 refers to "commercial motor vehicles." 
See 49 C.F.R. § 392.5 (1995).