TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00658-CV






Rodney and Dawna Moeller, Appellant




v.




Winn Cantwell, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT


NO. 96-173-C277, HONORABLE JOHN R. CARTER, JUDGE PRESIDING 







 Rodney and Dawna Moeller sued their neighbor, Winn Cantwell, claiming that her
negligent acts were the proximate cause of their personal injury damages. Cantwell filed a motion
for summary judgment contending that she did not owe a legal duty to the Moellers and even if
she did her actions were not a proximate cause of the Moellers' damages. The trial court granted
Cantwell's summary-judgment motion using general language. On appeal, the Moellers raise two
issues (1) whether Cantwell owed a legal duty to the Moellers which she breached and (2) whether
there remains an issue of material fact about whether Cantwell's actions were a proximate cause
of the Moellers' damages. We will affirm the trial-court judgment.


Factual and Procedural Background


 On April 19, 1996, the Moellers were awakened by a phone call from a neighbor
who asked Rodney, an Austin Police Officer, to come outside and help with a disagreement
occurring across the cul-de-sac. The Moellers dressed and went out to find their next-door
neighbors, Bonner and Suzanne Hardegree, standing in the middle of the cul-de-sac in a heated
confrontation with two teenaged boys, Christopher Wagner, age seventeen, and Roger Mara, age
eighteen. The boys were friends of Cantwell's fifteen-year-old daughter, Angela. As Rodney ran
across the cul-de-sac toward the group, Wagner and Mara turned and ran toward a sport utility
vehicle parked in Cantwell's driveway on the cul-de-sac. Wagner got in the vehicle on the
driver's side and Mara got in on the passenger side. As Wagner backed out of the driveway,
Rodney slapped the rear driver's side window and yelled "stop, police officer." Wagner ignored
Rodney's warning, backed out of the driveway and drove off. In doing so, the sport utility
vehicle struck Rodney's body and dragged him about forty feet. Rodney suffered severe head
injuries as well as other bodily injuries. Approximately thirty minutes later, Department of Public
Safety officers stopped Wagner and Mara; both were intoxicated.

 The Moellers sued Mara, Wagner and Cantwell claiming that the three caused
Rodney to suffer bodily injuries and economic damages including lost wages and medical expenses
and caused Dawna to suffer mental anguish as a result of witnessing the accident, loss of
consortium and lost wages as a result of having to leave her job to care for her husband. The
Moellers settled with Wagner and Mara and dismissed those claims, leaving only this claim
against Cantwell.

 In their petition, the Moellers alleged that over the past several months before the
incident, Cantwell encouraged and allowed many of Angela's teenaged friends, including Wagner
and Mara, to gather at her home for parties. The Moellers alleged that Cantwell furnished
alcoholic beverages to the teenagers, many of whom were younger than eighteen. She would
allow them to consume alcohol in her home and in the cul-de-sac in front of her house. They
alleged that teenagers often came by late at night and would drive recklessly up and down the
street. The Moellers and other neighbors discussed with Cantwell their concerns that someone
was going to get hurt. The Moellers and the neighbors asked Cantwell to control the activities
on her property by refusing to provide alcohol to the teenagers and refusing to allow them to
consume alcohol at her home. The Moellers alleged that despite their pleas Cantwell made no
effort to stop the activities at her house. The Moellers contended that Cantwell, by allowing the
visiting teenagers to drive recklessly and consume alcoholic beverages on her property, had
created a foreseeable risk of harm to the Moellers and thus breached a legal duty she owed to
them. The Moellers further alleged that this breach was a proximate cause of their damages.

 Cantwell specially excepted to the Moellers' petition. She contended that although
the Moellers alleged several duties were owed to them by Cantwell, none of the duties were
recognized by Texas law. Cantwell asked the trial court to instruct the Moellers to amend their
pleadings and allege recognized duties which if breached proximately caused the Moellers'
damages. The court granted Cantwell's special exceptions and the Moellers filed an amended
petition asserting contentions quite similar to those found in their original petition. Cantwell then
filed a motion for summary judgment.

 As summary-judgment proof, Cantwell submitted excerpts from her deposition and
Angela Cantwell's affidavit. Cantwell stated that she was not at home the night of the incident.
She had taken her son to a baseball game, attended the game and returned to the house with her
son after the game. Angela stated that she also was not at home the night Randy was injured as
she had attended a baseball game in Lampasas with a girlfriend. Neither she nor her mother had
invited Wagner or Mara to their house the day or night of the incident. She learned later that the
two boys had stopped by to see if she was at home. Neither Angela nor her mother were hosting
any parties that evening. Neither of them provided Wagner or Mara with any alcoholic beverages
during the day or on the night of the incident or allowed them to drink alcoholic beverages on the
premises that day.

 The Moellers responded with summary-judgment proof from a large portion of
Cantwell's deposition and affidavits from Dawna Moeller, several other neighbors, and Wagner.
The summary-judgment proof contained conflicting versions of what took place at Cantwell's
house on occasions before the night Rodney was injured; Cantwell denied ever serving alcoholic
beverages to the teenagers, while others say that she did. It is undisputed, however, that when
this incident occurred Cantwell and her daughter were not at home. In fact, Cantwell drove up
the street as the confrontation between Rodney, Wagner and Mara was in progress. When
Cantwell saw the disturbance, she parked her car on the street to stay out of the way rather than
proceeding through the cul-de-sac to her driveway. Additionally, Cantwell and Suzanne
Hardegree had a heated conversation the night before and Cantwell, upon seeing her embroiled
in another confrontation, thought it best to stay out of the way. She witnessed the incident from
her parked car. The trial court granted summary judgment in favor of Cantwell.


Discussion


 On appeal, the issues presented by the Moellers are (1) whether Cantwell breached
a legal duty she owed to the Moellers and, if so, (2) whether there exists a genuine issue of
material fact regarding Cantwell's breach of such a duty that was a proximate cause of the
Moellers' damages.

 A movant for summary judgment must show that there is no genuine issue of
material fact and that it is entitled to judgment as a matter of law. Nixon v. Mr. Property
Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). In deciding whether there is a disputed
material fact issue, the reviewing court considers all evidence favorable to the nonmovant as true
and indulges every reasonable inference and resolves any doubt in favor of the nonmovant. Id.
To obtain summary judgment, a defendant must negate at least one element of the plaintiff's
theory of recovery. Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996) (citing "Moore" Burger,
Inc. v. Phillips Petroleum Co., 492 S.W.2d 934, 936 (Tex. 1972)).


Did Cantwell Breach a Legal Duty Owed to the Moellers?

 The initial issue is whether Cantwell owed a legal duty to the Moellers to prevent
or protect them from the tortious activity of Wagner and Mara on the night Rodney was injured.
The existence of a legally cognizable duty is a prerequisite to all tort liability. Graff v. Beard,
858 S.W.2d 918, 919 (Tex. 1993) (citing Greater Houston Transp. Co. v. Phillips, 801 S.W.2d
523, 525 (Tex. 1991)).

 For summary-judgment purposes, we assume that the Moellers' allegations are true.
The Moellers' theory of recovery was that on several occasions before the night Rodney was
injured, Cantwell encouraged and allowed Wagner, Mara and other friends of her daughter to
attend parties at her home. On several prior occasions, Cantwell allowed her home to be used for
tortious and illegal conduct by serving alcoholic beverages to minors and allowing them to gather
and drink alcohol at her home and in the cul-de-sac outside of her home. The Moellers contend
Cantwell allowed this tortious activity on her property when she had the ability to control the
behavior of the minors by refusing to serve or allow them to drink alcohol on her property. This
activity, alleged the Moellers, presented an unreasonable and foreseeable risk of harm to the
Moellers.

 The existence of a legal duty is a question of law for the court to decide from the
facts surrounding the occurrence. See Walker v. Harris, 924 S.W.2d 375, 376 (Tex. 1996) (citing
Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995); Phillips, 801 S.W.2d at 525).
In Texas, as a general rule, a person has no legal duty to protect another from the criminal or
tortious acts of a third person or to control the conduct of another. Walker, 924 S.W.2d at 376
(citing Centeq, 899 S.W.2d at 197; Phillips, 801 S.W.2d at 525; Otis Eng'g Corp. v. Clark, 668
S.W.2d 307, 309 (Tex. 1983)); Graff, 858 S.W.2d at 920. An exception to this rule applies if
a special relationship exists which imposes a duty and ability to control a third party's conduct,
such as a master-servant relationship. See Otis Eng'g Corp., 668 S.W.2d at 311 (employer
directed intoxicated employee to drive home liable because of employer's control over employee). 

 The Moellers acknowledge "that in most cases, legal duties exist by statute or
recognized common law precedent." While the Moellers do not rely upon any legal duty
recognized by Texas law, they contend that the Court is "able as a matter of common law, [to]
employ the analysis set forth in Phillips to determine whether a duty exists under a given set of
circumstances." 

 The Phillips court determined that when considering whether a defendant owes a
duty to a plaintiff, the court is to consider 


several interrelated factors, including the risk, foreseeability, and likelihood of
injury weighed against the social utility of the actor's conduct, the magnitude of
the burden of guarding against the injury, and the consequences of placing the
burden on the defendant. Of these factors, foreseeability of the risk is "the
foremost and dominant consideration."



Phillips, 801 S.W.2d at 525 (citations omitted). Thus, before liability is imposed, there must be
evidence indicating that the defendant knew or should have known that harm would eventually
befall a victim. Id. at 526.

 In applying this analysis to the facts before us, the central question is whether the
Moellers presented a basis for imposing a duty upon Cantwell. The Moellers argue that there is
ample evidence to demonstrate the foreseeability of the risk of harm. The neighbors had warned
Cantwell about the risks to small children in the neighborhood created by teenaged visitors
drinking and driving recklessly down the street. The Moellers contend there is no social utility
in maintaining a place where teenagers may gather to drink alcoholic beverages illegally. The
Moellers contend that the only burden to be placed on Cantwell is "to recognize the rights and
interests of her neighbors in having a safe place to live." The Moellers contend that all Cantwell
had to do was stop serving alcohol to her daughter's teenaged friends and stop allowing them to
gather at her house at all hours of the night. They contend that what happened to Randy was not
an unforeseeable occurrence. It was, they contend, set in motion by Cantwell and permitted by
her to occur.

 We note that the supreme court has determined that social host liability does not
exist in Texas for serving alcohol to persons age eighteen and older. See Smith v. Merritt, 940
S.W.2d 602, 607-08 (Tex. 1997); Graff, 858 S.W.2d at 921; see also Friesenhahn v. Ryan, 960
S.W.2d 656, 658 n.1 (Tex. 1998). The supreme court has not directly addressed the issue of
whether social host liability exists for serving alcohol to minors under eighteen. Those cases are
distinguishable because the defendants (or their children, or grandchildren) were serving alcohol
in a social setting, a party attendee left, and caused harm to another individual. In this case, there
is no allegation that on the night of the incident Cantwell was hosting a party or serving alcohol
to underage people who then left the party and caused harm. Even if in the past Cantwell had
served alcohol to people under eighteen, she did not do so on the night of the incident.

 In conducting the Phillips analysis, we consider whether Cantwell had any right
or ability to control Wagner's and Mara's actions the night of the incident. Regardless of past
incidents, the summary-judgment proof established that Cantwell had no control over Wagner's
and Mara's actions the night of the incident. We decline to hold that Cantwell owed a duty to the
Moellers that night.

 Additionally, as bases for their claims against Cantwell, the Moellers rely on
sections 318, 371, and 877 of the Restatement (Second) of Torts, none of which has been adopted
as a basis for a duty in Texas. Cantwell responds that none of these sections apply to the facts
of this case.


Section 318

 Section 318 imposes a duty on an actor to exercise reasonable care to control the
conduct of a third person to prevent that person from intentionally harming or creating an
unreasonable risk of danger if the actor is present, the actor knows or has reason to know that she
has the ability to control the third person, and the actor knows or should know of the necessity
and opportunity for exercising such control. (1) See Restatement (Second) of Torts § 318 (1965). 
The Moellers contend that this section applies because Cantwell had in the past allowed her
daughter's friends to use her property to drink alcoholic beverages and at the time Rodney was
injured she was sitting in a parked car only a few houses away. The Moellers contend that based
on these facts Cantwell was present and had the ability to control Wagner's and Mara's actions
the night Randy was injured. We disagree. There is no indication in the record that Cantwell
invited Wagner and Mara to her house or that she permitted them to use her property the night
of the incident. Additionally, the fact that Cantwell drove up during the altercation and decided
to sit in her car several houses away indicates that she was not present at the house and did not
have the ability to control the teenaged boys' behavior. We conclude that section 318 does not
apply to the facts in this case.


Section 371

 Section 371 imposes liability on a possessor of land for activities carried on by the
possessor on the land that results in harm away from the land. (2) See Restatement (Second) of Torts
§ 371 (1965). The Moellers contend that Cantwell was subjected to liability under this section
by "providing alcohol to minors and allowing minors to consume alcohol at her home [and] to
gather there at all hours of the night for purposes of obtaining and consuming alcohol." Assuming
as alleged that Cantwell had engaged in these activities in the past, the Moellers did not allege that
she did so on the night of the incident. We conclude that section 371 does not apply to the facts
of the case.


Section 877

 Section 877 imposes liability on an actor for permitting the tortious conduct of a
third person that results in harm occurring on the actor's premises or by instrumentalities that
belong to the actor if the actor knows or has reason to know that the third person is acting or will
act tortiously. (3) See Restatement (Second) Torts § 877 (1965). The Moellers contend that this
section applies because Cantwell had previously permitted Wagner and Mara to act tortiously on
her property and therefore she knew they would do so again. There was no allegation that
Wagner and Mara used any instrumentalities that belonged to Cantwell when they caused damages
to Rodney. Nor is there any allegation that Cantwell "permitted" the teenagers to act tortiously
on the night Rodney was injured. She had been away from home attending her son's baseball
game. She returned just as the incident was erupting. We conclude that section 877 does not
apply to the facts in this case. 

 Assuming all factual inferences in favor of the Moellers and resolving all conflicts
in the summary-judgment proof in their favor, we hold that Cantwell did not owe the Moellers
a legal duty to protect them from the tortious actions of Wagner and Mara and the sections of the
Restatement of Torts upon which they rely do not apply to the facts in this case. We overrule the
Moellers' first issue.


Conclusion


 Because we have determined that based upon the facts of this case Cantwell did not
owe any legal duty to the Moellers, it is unnecessary for us to address the Moellers' second
appellate issue. We affirm the trial court's judgment.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: September 10, 1999

Do Not Publish
1.   Restatement (Second) of Torts section 318 provides:


If [an] actor permits a third person to use land or chattels in his possession otherwise
than as a servant, he is, if present, under a duty to exercise reasonable care so to
control the conduct of the third person as to prevent him from intentionally harming
others or from so conducting himself as to create an unreasonable risk of bodily harm
to them, if the actor


(a) knows or has reason to know that he has the ability to control the third person,
and 


(b) knows or should know of the necessity and opportunity for exercising such
control.


Restatement (Second) of Torts § 318 (1965) (emphasis added).
2.   The Restatement (Second) of Torts Section 371 provides:


A possessor of land is subject to liability for physical harm to others outside of the
land caused by an activity carried on by him thereon which he realizes or should
realize will involve an unreasonable risk of physical harm to them under the same
conditions as though the activity were carried out in a neutral place. 


Restatement (Second) of Torts § 371 (1965). 
3.   Restatement (Second) of Torts section 877 provides:


For harm resulting to a third person from the tortious conduct of another, one is
subject to liability if he 


(c) permits the other to act upon his premises or with his instrumentalities, knowing
or having reason to know that the other is acting or will act tortiously. 


Restatement (Second) of Torts § 877 (1965). 



EF="#N_2_"> (2) See Restatement (Second) of Torts
§ 371 (1965). The Moellers contend that Cantwell was subjected to liability under this section
by "providing alcohol to minors and allowing minors to consume alcohol at her home [and] to
gather there at all hours of the night for purposes of obtaining and consuming alcohol." Assuming
as alleged that Cantwell had engaged in these activities in the past, the Moellers did not allege that
she did so on the night of the incident. We conclude that section 371 does not apply to the facts
of the case.


Section 877

 Section 877 imposes liability on an actor for permitting the tortious conduct of a
third person that results in harm occurring on the actor's premises or by instrumentalities that
belong to the actor if the actor knows or has reason to know that the third person is acting or will
act tortiously. (3) See Restatement (Second) Torts § 877 (1965). The Moellers contend that this
section applies because Cantwell had previously permitted Wagner and Mara to act tortiously on
her property and therefore she knew they would do so again. There was no allegation that
Wagner and Mara used any instrumentalities that belonged to Cantwell when they caused damages
to Rodney. Nor is there any allegation that Cantwell "permitted" the teenagers to act tortiously
on the night Rodney was injured. She had been away from home attending her son's baseball
game. She returned just as the incident was erupting. We conclude that section 877 does not
apply to the facts in this case. 

 Assuming all factual inferences in favor of the Moellers and resolving all conflicts
in the summary-judgment proof in their favor, we hold that Cantwell did not owe the Moellers
a legal duty to protect them from the tortious actions of Wagner and Mara and the sections of the
Restatement of Torts upon which they rely do not apply to the facts in this case. We overrule the
Moellers' first issue.


Conclusion


 Because we have determined that based upon the facts of this case Cantwell did not
owe any legal duty to the Moellers, it is unnecessary for us to address the Moellers' second
appellate issue. We affirm the trial court's judg