James Gerard JENKINS, Appellant,

v.

The KEMLON PRODUCTS & DEVEL-
OPMENT CO. and Keystone Engi-
neering Co., Appellees.

No. 14–95–00345–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 23, 1996.

Jeffrey A. Jansen, Houston, Jack G. Carnegie, Houston, for appellant.

Arthur R. Almquist, Houston, Charles L. Perry, Houston, for appellees.

Before MURPHY, C.J., and AMIDEI and ANDERSON, JJ.

**OPINION**

ANDERSON, Justice.

Appellant, James Gerard Jenkins, appeals a summary judgment granted in favor of appellees, Kemlon Products and Development Co. (Kemlon) and Keystone Engineering Co.[1] Jenkins sued appellees for negligence following a motorcycle accident in which Jenkins was injured by Gerald Holifield, an employee of Kemlon. Jenkins alleged that Kemlon was liable for his injuries because it worked Holifield to the point of exhaustion and then allowed him to drive home. The trial court granted summary judgment for Kemlon on the basis that it did not owe a legal duty to Jenkins. In one point of error, Jenkins contends the trial court misapplied the law by finding no duty, and relied on incompetent summary judgment proof. We affirm.

On Saturday February 29, 1992, Jenkins was driving his motorcycle when Holifield collided with him in his automobile. As a result of the collision, Jenkins' spleen and aorta were ruptured, his pelvis broken, and he sustained nerve damage partially paralyzing one of his legs. In the weeks prior to the accident, Holifield had been working long hours and had about a ninety minute commute to work each way. The day of the accident, Holifield had worked a half-day, and had been away from work for about six hours prior to the accident. During this six hour period, Holifield consumed at least two beers while playing pool. Holifield also testi-

fied in his deposition that he could not see Jenkins because of sunlight reflecting off of his rear window. He also contended that at the time of the accident he was suffering a hiatal hernia in his throat, which was probably exacerbated by the alcohol. Shortly after the accident, a police officer observed a pool of beer on the floorboard of Holifield's car, which Holifield contended was caused by vomit.

■ In his sole point of error, Jenkins contends the trial court erred by granting summary judgment in favor of appellees. Summary judgment is proper if the movant establishes there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion. Tex.R.Civ.P. 166a(c). In deciding whether there is a material issue of fact in dispute, all proof favorable to the non-movant will be taken as true. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985).

■ Appellant concedes that Holifield was not acting in the course and scope of his employment, but nevertheless maintains appellees owed a duty to third persons on public roads not to endanger such persons by allowing an exhausted employee who faced a long commute to his home to leave the job site. In determining whether the defendant was under a duty, a court should consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). Of all these factors, foreseeability of the risk is the foremost and dominant consideration. *Id.*

■ Jenkins contends Kemlon owed a duty to him because they incapacitated Holifield by overworking him and then negligently handled his incapacitation by allowing him to drive home. Jenkins relies on *Otis Engineering Corp. v. Clark* for his contention that Kemlon is liable despite the fact that Holi-

---

1. Jenkins contends Keystone and Kemlon are alter egos of the same company. This is not an issue in this appeal and for simplicity, the appellees will be collectively referred to as Kemlon.

field was acting outside the scope of his employment when he hit Jenkins. *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex.1983). In *Otis*, the Supreme Court held:

> [W]hen, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others.

*Id.* at 311. In *Otis*, an employee was escorted to the door and *told* to leave work after his supervisor learned that the employee was severely intoxicated. Shortly after leaving, the employee caused an automobile accident, killing two people. The Court reasoned that once the employer took control of the incapacitated person, the employer assumed a responsibility to exercise that control in a reasonably prudent manner. *Id.* The Court imposed the duty on the employer not because of the mere knowledge of the incapacity, but because of the employer's negligent exercise of control after becoming aware of the incapacity. *Id.* at 309-11; *see also Greater Houston Transp. Co.*, 801 S.W.2d at 526.

*Otis*, however, does not apply to the situation raised in this appeal. *Otis* requires that an employer have knowledge of the employee's incapacity, and then exercise *control* over the incapacitated person. *Id.* at 309-11 (emphasis added). The accident between Holifield and Jenkins occurred six hours after he left work, during which time Holifield consumed at least two beers. Thus, even if Holifield had been incapacitated from his half-day at work, the lapse of six hours attenuated any control Kemlon might have had over him. Moreover, Kemlon's summary judgment proof established that Holifield was not incapacitated. According to Holifield's deposition, which Kemlon attached to its motion as summary judgment proof, he was not incapacitated. He testified that he had not lost the use of his physical and mental faculties, but felt tired and "wore out." These assertions were uncontroverted. This does not rise to the level of incapacity described in *Otis*.[2] The employee in *Otis* was in "an extreme state of intoxication ... [that was] known to his supervisor and fellow workers." *Id.* at 308. Further, he had consumed an amount of alcohol equivalent to "sixteen to eighteen cocktails if consumed over one hour." *Id.* Considering Holifield merely felt tired, and still had control over his faculties at the time of his departure from work, appellant has not demonstrated that Holifield was impaired upon leaving Kemlon, and thus cannot satisfy the first prong of *Otis*, which requires incapacity and knowledge of that incapacity by the employer.

Appellant also relies on *El Chico Corp. v. Poole* to support the imposition of a duty on appellees. *See El Chico Corp. v. Poole*, 732 S.W.2d 306 (Tex.1987). In *El Chico*, the Court held that an alcoholic beverage licensee owes a duty to the general public not to serve alcoholic beverages to a person when the licensee knows, or should know, that the patron is intoxicated. *Id.* at 314. Appellant analogizes the foreseeability of a drunk restaurant patron creating a hazard to the general public to the foreseeability of a tired employee creating a hazard while driving home on the public roads.

The duty imposed in *El Chico* is not applicable to this situation. In addition to the obvious factual distinctions, the duty imposed in *El Chico*, like that imposed in *Otis*, arose from an affirmative act which had foreseeable, adverse consequences. Appellant here contends that appellees engaged in an affirmative act by requiring their employees to work long hours. However, knowingly allowing an intoxicated person to leave your establishment has a much greater element of foreseeability of adverse consequences than allowing a tired employee to go home after work. Moreover, in the employer-employee context, mere knowledge of incapacity is not enough. *Otis Engineering Corp.*, 668 S.W.2d at 309.

---

**2.** We also note that in a law review article co-authored by Justice William Kilgarin, the author of the *Otis* opinion, he stated that, "Because the duty will vary depending on specific facts, it may be correct that, to a large extent, *Otis* is limited to its facts." William J. Kilgarin & Sandra Sterba–Boatwright, *The Recent Evolution of Duty in Texas*, 28 S. Tex.L.Rev. 241, 273 (1987).

In the instant case, the foreseeability of potential adverse consequences is even more attenuated in that Kemlon would have to anticipate that a tired employee in need of rest would postpone that objective for six hours so he could play pool and drink beer. Moreover, when the risk, foreseeability, and likelihood of injury is weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant, the balance is heavily in favor of not imposing a duty under these facts. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Otherwise, an employer would have the burden of monitoring its employees prior to their departure from work, and in certain cases preventing them from leaving if they seemed fatigued, or establishing a shorter work day that would accommodate even those with the least stamina.

Finally, appellant relies on a West Virginia case that imposed a duty on an employer for allowing an exhausted employee to drive home after working for twenty-seven consecutive hours. *See Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563 (1983). The Texas Supreme Court expressly approved of this holding in *Otis*. *Otis Engineering*, 668 S.W.2d at 311. The West Virginia Supreme Court of Appeals stated that the issue was "whether the appellee's conduct prior to the accident created a foreseeable risk of harm." *Robertson*, 301 S.E.2d at 567. Thus, even if we applied the holding of the West Virginia court, *Robertson* suggests that appellees owed no duty to Jenkins because the appellees' conduct prior to the accident consisted of allowing Holifield to leave after working only a half-day. We decline to equate the risk of harm to third persons from an employee who has worked only half a day to the risk of harm from one who has worked for more than twenty-four continuous hours.

Thus, the cases upon which appellant relies do not establish a basis for placing a duty on appellees in this case. Moreover, several cases from Texas hold that no duty exists in factually similar circumstances. First, the El Paso Court of Appeals considered whether an employer owes a duty to persons who are injured by an off-duty employee, who, after leaving work for the day, consumed alcohol in a parking lot adjacent to the employer's premises and was subsequently involved in an automobile accident on a public street. *See DeLuna v. Guynes Printing Co. of Texas*, 884 S.W.2d 206 (Tex.App.—El Paso 1994, writ denied). The Court upheld a summary judgment in favor of the employer because the employer did not know of the employee's incapacity and did not exercise any control over the employee. *Id.* at 210.

Second, the Dallas Court of Appeals held that an employer owed no duty to third parties traveling on the highway after allowing an employee to drive home after working for twenty hours straight. *See Moore v. Times Herald Printing Co.*, 762 S.W.2d 933 (Tex.App.—Dallas 1988, no writ). The court held that because there was no evidence that the employer had knowledge of the employee's incapacity, and the employer did not perform an affirmative act to control the employee's actions, the employer owed no duty to a third party motorist. *Id.* at 935.

Appellant attempts to distinguish *DeLuna* and *Moore* on the basis that he is alleging appellees *created* the hazardous condition. However, to accept this distinction would be a departure from the holding in *Otis*, which requires knowledge of incapacity and an affirmative act of control over the incapacitated employee. Essentially, appellant is asking this Court to create a new duty requiring employers to either refrain from over-working their employees or closely monitor their behavior and prevent them from leaving work if they sense any indication of fatigue. Moreover, the scope of this duty would have to extend, under the facts of this case, to persons injured by employees who had been off work for six hours. This would place a substantial burden on employers despite the fact that the essential foreseeability of the risk factor within the duty element is almost nonexistent. Consequently, we decline to extend the holding of *Otis* to impose this duty on employers.

■ Appellant also contends appellees failed to present competent summary judgment proof. First, appellant contends the trial court erred by overruling his objection

to the use of plaintiff's original petition as part of the summary judgment proof. Plaintiff had previously amended this petition, and thus, the original petition was not a live pleading. However, the original petition was not offered by Kemlon as a judicial admission. *See MBank Brenham, N.A. v. Barrera,* 721 S.W.2d 840, 842 (Tex.1987) (holding that abandoned pleadings may not be used as a judicial ·admission to create a material fact issue but must be properly authenticated before they may be used as summary judgment proof).[3] The superseded petition attached to appellees' motion for summary judgment was not properly authenticated, and therefore, not competent summary judgment proof. However, unlike the summary judgment movants in *MBank,* appellees were not attempting to create a fact issue by using the abandoned pleading. The appellees apparently attached the petition to show the nature of the claim against them. However, they did not need to attach the original petition at all because Jenkins' live pleading was already on file with the court. *See* TEX. R.CIV.P. 166a(c) (providing that pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records *on file* before the summary judgment hearing, or filed thereafter and before judgment with permission of the court, may be used by the Court to determine that there is no genuine issue of as to any material fact and the movant is entitled to judgment as a matter of law.) (emphasis added). The trial court determined that Kemlon was entitled to summary judgment as a matter of law, and did not advert to Jenkin's superseded pleading filed by Kemlon in reaching that decision.

Second, appellant contends the affidavit of John Ring, Vice President, Secretary, and Treasurer of Kemlon, was defective because it did not establish Ring had personal knowledge of the information and was conclusory. Mr. Ring stated in the affidavit that his personal knowledge was derived from his position at Kemlon. The portion of the affi-

davit that formed the basis for summary judgment stated:

> Neither I nor anyone else from Kemlon exercised any control over Mr. Holifield's actions when he left work at approximately 12:00 p.m. Mr. Holifield was not performing any business function of Kemlon at the time of his accident. Further, he left work in his own vehicle, at the scheduled departure time on his own will, and he was not under any instructions from Kemlon when he left.

Affidavits supporting a summary judgment motion must be based on personal knowledge, set forth facts that would be admissible in evidence, and must affirmatively show that the affiant is competent to testify to the matters stated in the affidavit. TEX.R.CIV.P. 166a(f). A summary judgment may be based on uncontroverted testimonial evidence of an interested witness if the evidence is clear, positive and direct, otherwise free from contradiction and inconsistencies, and could have been readily controverted. TEX.R.CIV.P. 166a(c).

Ring's affidavit states that his personal knowledge "stems from [his] role as Vice–President, Secretary, and Treasurer" of Kemlon. However, Ring was not working the day Holifield caused the collision. Thus, the personal knowledge as to whether Holifield left on his own without instructions from Kemlon must be based on hearsay. However, sufficient grounds exist for affirming the summary judgment without considering this affidavit. The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Greater Houston Transp. Co.,* 801 S.W.2d at 525. Undisputed summary judgment proof established that Holifield left work at noon after working a half-day. Further, the summary judgment proof conclusively established that the accident occurred approximately six hours later. Moreover, as discussed above, Holifield was not incapacitated when he departed from Kemlon. Therefore, even without Ring's affidavit, suf-

---

**3.** The Court in *MBank* relied on its earlier decision in *Drake Ins. Co. v. King,* 606 S.W.2d 812 (Tex.1980) which held that an original petition, once superseded, is no longer a judicial admission, but must be introduced into evidence as any other admission before it may be considered as evidence.

ficient proof exists in the record to affirm the trial court judgment that Kemlon owed no duty to Jenkins. Accordingly, we overrule appellant's sole point of error.

The judgment of the trial court is affirmed.