Edith Carol **PEAVY** and O.L. Peavy, Individually and as Personal Representative of The Estate of Elizabeth Ann Peavy, Deceased, Appellants,

v.

**TEXAS HOME MANAGEMENT, INC., Appellee.**

**No. 01–97–01125–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 30, 1999.

---

W. Burl Brock, San Antonio, for Appellants.

Jay D. Hirsch, Fred L. Shuchart, Houston, for Appellee.

Panel consists of Justices WILSON, TAFT, and NUCHIA.

## OPINION

DAVIE L. WILSON, Justice.

Appellants, Edith Carol Peavy and O.L. Peavy, individually and as personal representative of the estate of Elizabeth Ann Peavy, deceased, appeal the rendition of summary judgment in favor of appellee, Texas Home Management, Inc. ("THM"), on their negligence and breach-of-contract causes of action. We affirm in part and reverse in part.

### Factual and Procedural Background

Anthony Tyrone Dixon shot and killed Elizabeth Ann Peavy in Houston, Texas while stealing her car. Dixon was on weekend leave to visit his mother from his court-mandated residence at Lakewood House ("Lakewood") in Nacogdoches. Dixon was a resident at Lakewood pursuant to a contract between THM and the Texas Department of Human Services

("DHS"). Lakewood was owned and managed by THM.

The Peavys sued THM for negligence and gross negligence. THM moved for summary judgment on the basis that it did not owe the Peavys a duty under Texas law. After responding to the motion for summary judgment, the Peavys amended their petition to assert a breach-of-contract claim, alleging they were third-party beneficiaries of the contract between THM and DHS, as well as beneficiaries of the court's order committing Dixon to the control of the Texas Department of Mental Health and Mental Retardation ("MHMR").

On June 4, 1997, the trial court granted THM's motion for summary judgment. The summary judgment did not address the Peavys' breach-of-contract claim. THM moved to sever the Peavys' claims against Dixon from those against THM, and the court granted the severance. The Peavys then filed their notice of appeal. After the notice of appeal was filed, the Peavys filed their brief asserting their third-party-beneficiary claim had not been addressed by the summary judgment and, therefore, that summary judgment was interlocutory. In response, THM filed a motion for summary judgment on the Peavys' third-party-beneficiary claim. Eight months after the notice of appeal was filed, on April 13, 1998, the trial court signed a summary judgment, which disposed of Peavys' third-party-beneficiary claim, thereby resulting in all of Peavys' claims against THM becoming final and appealable.

## Points of Error

The Peavys contend the trial court erred in rendering summary judgment because there were issues of material fact which precluded summary judgment on their negligence cause of action. The Peavys further contend the trial court erred in rendering summary judgment because THM's motion failed to address the Peavys' third-party-beneficiary claim.

## Standard of Review

A party moving for summary judgment has the burden of proving there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, we accept the evidence that favors the nonmovants as true and indulge all reasonable inferences and resolve all doubts in favor of the nonmovants. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). When the defendant produces competent evidence to negate a necessary element of the plaintiffs' cause of action, to preclude summary judgment, the plaintiffs must introduce evidence sufficient to raise a fact issue with respect to the element the defendant seeks to negate. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). We must affirm the judgment if any theory advanced by the defendant in its motion is meritorious. *Cincinnati Life Ins., Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996).

## The Summary Judgment Evidence

The summary judgment evidence consists of the following: (1) affidavit of Gail Webb, a THM administrator; (2) affidavit and sworn testimony of Freddie Avant, a consulting social worker for Lakewood; (3) court orders regarding Dixon's commitment; (4) sworn testimony of Pam Harrison, Lakewood's home manager; (5) sworn testimony of Evelyn Dixon, Dixon's mother; (6) sworn testimony of Dan Crieger; (7) affidavit of Edwin Johnstone, M.D.; and (9) Lakewood's records documenting Dixon's violent acts.

After a complete diagnostic evaluation by MHMR, Dixon was committed by court order to the custody of MHMR for an indefinite period for his "own welfare and the protection of others." The referral to MHMR was made by the juvenile probation department after Dixon was taken into custody for burglary. Based on the

pleadings, evidence, argument of counsel, and certificates filed with the court, the district court found that (1) Dixon was mentally retarded and (2) Dixon was not a threat to himself or others.

Dixon was later admitted to Lakewood. Lakewood provided residential services to persons with mental disabilities. All residents of Lakewood were diagnosed as having mental retardation. Lakewood assessed the manner and degree to which the residents suffered from a disability. The services provided by Lakewood included healthcare, social services, and psychological and psychiatric evaluation and treatment, if needed. Lakewood established goals for the residents based on the resident's abilities. Training was provided to help the residents achieve these goals. Residential services did not involve incarceration. Federal regulations required the facility to promote family visits and frequent and informal leave.

Avant was employed by THM as a consulting social worker for Lakewood. Dixon attended public school at Nacogdoches Independent School District. Avant worked directly with Dixon, which included dealing with issues related to Dixon's behavior within the school system and methods of controlling that behavior. In Avant's affidavit, he stated he had never heard Dixon make threats about specific individuals. Nor had he heard of any threats Dixon had made while on weekend release. In his sworn testimony during the punishment phase of Dixon's criminal trial for Elizabeth's murder, Avant testified he was aware, before Elizabeth's murder, that Dixon had broken the law during home visits, including an incident in which Dixon reportedly had a weapon.

Harrison, Lakewood's home manager, testified Dixon had been violent at Lakewood on several occasions, including threatening to kill another resident of the facility. Harrison was also aware Dixon had broken the law during visits with his mother in Houston before Elizabeth's death. Harrison stated she had been opposed to Dixon's home visits because his behavior problems increased when he returned to Lakewood. According to Harrison, THM's interdisciplinary team made the decisions regarding whether Dixon went home for visits.

Dixon's mother also testified at Dixon's criminal trial for Elizabeth's murder that MHMR determined whether Dixon could go home for visits. Dixon's home visits had been suspended at one time because of his behavioral problems. On one occasion, Dixon's mother called Lakewood staff and told them not to send Dixon back home because of his behavior during visits.

According to Lakewood's records and sworn testimony during the punishment phase of Dixon's criminal trial, Dixon had committed numerous acts of violence, including an incident that occurred while he was visiting his mother in which he possessed a gun. Lakewood employees were aware of these incidents before Elizabeth's death.

## Negligence Cause of Action

■ The Peavys assert the trial court erred by rendering summary judgment because there were issues of material fact. THM contends it did not owe the Peavys a duty under Texas law to prevent Dixon's criminal act.

■ Duty is the threshold issue in a negligence case, and the existence of a duty is a question of law for the court to decide from the circumstances surrounding the occurrence. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990). In assessing whether a defendant owes a duty, the court considers several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983). Of these factors, foreseeability of the risk is the domi-

nant consideration. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987).

THM alleges the Peavys must show that Elizabeth was a readily identifiable victim of Dixon and that a special relationship existed between Dixon and THM. To support its position, THM relies on *Kehler v. Eudaly*, 933 S.W.2d 321 (Tex.App.—Fort Worth, 1996, writ denied), *Williams v. Sun Valley Hospital*, 723 S.W.2d 783 (Tex. App.—El Paso 1987, writ ref'd n.r.e.), and *Limon v. Gonzaba*, 940 S.W.2d 236 (Tex. App.—San Antonio 1997, writ denied). However, all of these cases are *Tarasoff/Thompson*-type [1] cases that addressed the issue of a health care provider's duty to *warn* a foreseeable victim. The Peavys have not pleaded negligent failure to warn. Rather, they allege in their pleadings that THM was negligent in failing to *control* Dixon. Therefore, THM's reliance on these cases is misplaced.

 While there is generally no duty to control the conduct of third persons, this rule does not apply when a special relationship exists between the actor and the third person which imposes a duty on the actor to control the third person's conduct. *Phillips*, 801 S.W.2d at 525. Such relationship has been found between employer and employee, parent and child, and independent contractor and contractee under special circumstances. *Id.*

In *Otis*, the Texas Supreme Court held that employers who exercise control over an incapacitated employee owe a duty of reasonable care to third parties who are at risk of injury from that employee. *Otis*, 668 S.W.2d at 311. "Such a duty may be

analogized to cases in which a defendant can exercise *some control* over a dangerous person when there is a recognizable great danger of harm to third persons." *Id.; see also Graff v. Beard*, 858 S.W.2d 918, 920 (Tex.1993) (stating right to control is factor in determining duty) (emphasis added). Moreover, a person may be liable for the acts of another person when he or she has superior knowledge of a particular risk the other person poses. *El Chico*, 732 S.W.2d at 314; *Texas Dep't. of Mental Health & Mental Retardation v. McClain*, 947 S.W.2d 694, 697 (Tex.App.—Austin 1997, writ denied).

In recognizing this duty, the Court in *Otis* relied in part on the *Restatement (Second) of Torts*, section 319,[2] which provides:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

RESTATEMENT (SECOND) OF TORTS § 319 (1965); *see Otis*, 668 S.W.2d at 311.

In addition to *Otis*, a more recent case embracing the duty imposed by *Otis* and section 319 is *Kerrville State Hospital v. Clark*, 900 S.W.2d 425 (Tex.App.—Austin, 1995), *rev'd on other grounds*, 923 S.W.2d 582 (Tex.1996). In *Kerrville*, the parents of a woman who had been murdered by her estranged husband while he was on outpatient commitment at a state hospital sued the hospital and MHMR for wrongful death. The court of appeals held that the

---

1. *Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976), and *Thompson v. County of Alameda*, 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980), established that a healthcare provider owes no duty to warn unless a patient has made specific threats against an identifiable victim.

2. THM cites *Van Horn v. Chambers*, 970 S.W.2d 542 (Tex.1998), for the proposition that the *Restatement (Second) of Torts*, section 319, is not the law in Texas. However, *Van*

*Horn* is distinguishable on its facts because the issue in that case involved the relationship between a physician and patient. The Texas Supreme Court held that section 319 was not applicable because a physician has no inherent right to control a patient.

While we recognize that section 319 has not been adopted as the law in Texas, we find it persuasive that the Texas Supreme Court relied on section 319 in *Otis* and that four justices relied on section 319 in their dissent in *Kerrville State Hospital v. Clark*, 923 S.W.2d 582 (Tex.1996).

state hospital took charge of the patient when it permitted his voluntary commitment and, as such, had a duty to use reasonable care in its release of the patient. *Kerrville*, 900 S.W.2d at 436. In concluding that a duty existed, the court of appeals held that the state hospital had two options in exercising control over the patient: (1) petition the court to change the outpatient commitment to inpatient commitment or (2) prescribe an injectable antipsychotic medication that would have stabilized the patient's outpatient condition. *Id.*[3]

The cases that have found that a duty to control exists do not require that the victim be readily identifiable. Rather, the focus has been on whether or not the defendant had taken charge of the dangerous person and whether or not there was a foreseeable danger to others. *See McClain*, 947 S.W.2d at 697 (holding one who can exercise charge over dangerous person has duty to exercise some measure of reasonable control when there is recognizable and great danger of harm to others).

We hold that a special relationship existed between THM and Dixon sufficient to impose a duty on THM to control Dixon's behavior. Clearly, THM was responsible for controlling Dixon when he became a resident of its facility pursuant to Dixon's court-ordered commitment[4] and its contract with DHS to provide Dixon with services; thus, it was under a duty to use reasonable care in determining whether Dixon was allowed to continue unsupervised home visits. Like the hospital in *Kerrville*, THM had a choice other than allowing Dixon to go home.

■ In the instant case, the risk, foreseeability, and likelihood of injury were within the knowledge of THM. Evidence in the record indicates Dixon's behavior worsened during home visits. The record is replete with incidents of violence by Dixon of which THM was aware, including an incident in which Dixon possessed a gun. Further, THM had superior knowledge of Dixon's violent behavior. Therefore, the trier of fact in this case should be left free to decide whether THM acted reasonably, considering it had a duty to control Dixon and had the authority to restrict his unsupervised home visits. As the summary judgment proof raises fact questions concerning the reasonableness of THM's conduct, a fact issue is present and summary judgment was improper.

Point of error one is sustained.

### Third–Party–Beneficiary Claim

■■ The Peavys' second point of error claims the trial court erred in rendering summary judgment on their third-party-beneficiary claim because it was not addressed in the June 4, 1997 summary judgment. As stated above, the judgment became final and appealable after the trial court signed the April 13, 1998 summary judgment, disposing of all of the Peavys' claims. The Peavys have wholly failed to brief these points on either the law or the law's relation to the facts of this case.

---

3. After a jury verdict finding in favor of the plaintiff, MHMR and Kerrville moved for judgment notwithstanding the verdict. The trial court granted MHMR's motion, but denied Kerrville's motion. The court of appeals affirmed.

In a 5–4 decision, the Texas Supreme Court reversed the judgment of the court of appeals and rendered judgment for Kerrville on the grounds that Kerrville had not waived its sovereign immunity. The majority opinion never addressed the issue of duty.

Justice Abbott, joined by Chief Justice Phillips and Justices Cornyn and Spector, dissented. The dissent went beyond the issue of sovereign immunity and addressed the merits of the negligence claim, specifically the element of duty, stating that the *Restatement (Second) of Torts*, section 319, established a duty of care in this case. Kerrville, 923 S.W.2d 582, 588.

4. The judgment stated, "While the child remains in their custody, [MHMR] shall have authority to consent to psychiatric, psychological, and medical treatment ... and shall further have the duty to insure that the child is afforded adequate care, *control*, protection, reasonable discipline, clothing, food and shelter." (Emphasis added).

Although appellate courts generally construe the briefing rules liberally, points of error unsupported by the citation of authority present nothing for the court to review. *Harris County Mun. Util. Dist. No. 48 v. Mitchell,* 915 S.W.2d 859, 866 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

Point of error two is overruled.

### Conclusion

We affirm in part as to the April 13, 1998 summary judgment, reverse in part as to the June 4, 1997 summary judgment, and remand the cause to the trial court for further proceedings on all issues except those relating to the April 13, 1998 summary judgment.

