758 So.2d 332 (2000)
Quincena BAGGETT, Individually, and on Behalf of her Minor Children, etc.
v.
Stephen F. BRUMFIELD and Basic Industries.
No. 99-1484.
Court of Appeal of Louisiana, Third Circuit.
March 1, 2000.
Writ Denied May 12, 2000.
*333 R. Scott Iles, Lafayette, Louisiana, Counsel for Plaintiffs/Appellees.
Nicholas Canaday, III, Keogh, Cox, & Wilson, Baton Rouge, Louisiana, Counsel for Basic Industries, Defendant/Appellant.
Court composed of Judge NED E. DOUCET, Chief Judge, Judge BILLIE COLOMBARO WOODARD, and Judge MICHAEL G. SULLIVAN.
WOODARD, Judge.
In this tort litigation, the issues are whether an employer may be (1) vicariously liable, or (2) directly negligent for an accident occurring on public highways caused by an off-duty employee, on his way home from a twenty-one-hour shift, who apparently fell asleep, causing his vehicle to drift in the opposing lane of traffic, hitting a third-party motorist's vehicle head-on.
First, we affirm the trial court's decision finding no vicarious liability for the employer. It is well settled that an employer may not be vicariously liable for their employees' negligent acts which occur while on their way home from work. Moreover, we find that the Plaintiff did not set forth any genuine issues of material facts pertinent to its burden of proving an exception to this rule.
Second, we reverse the trial court's decision, finding the employer negligent for failing to prevent its employee from driving home after working a twenty-one-hour shift or for failing to keep its employee from working twenty-one-hour shifts and assessing the employer forty percent of fault. This issue is one of first impression in our state. We find that, as a matter of law, an employer does not owe a duty to public highway users under the circumstances sub judice.
In the early morning of November 12, 1996, as he drove to work at the Temple-Inland Lumber Mill (Temple) in DeQuincy, Louisiana, Mr. Royan Baggett, tragically lost his life, when his vehicle was hit headon by a Chevrolet Blazer operated by Mr. Stephen Brumfield. The accident occurred at approximately 4:50 a.m. Mr. Baggett was proceeding south on Highway 171, south of DeRidder. Mr. Brumfield attempted to return to Leesville after a lengthy work day in Sulphur, Louisiana.
Mr. Carwin Joseph Archield, one of Mr. Baggett's co-workers, also on his way to work, arrived first on the scene of the accident. Immediately, he noticed that Mr. Brumfield's vehicle leaked an inflammable fluid. He pulled him out of his car and, then, directed himself toward the other vehicle which he realized belonged to Mr. Baggett. He attempted to open Mr. Baggett's truck to pull him out, but found the doors blocked. He reached inside to check his vital signs. He did not feel a *334 pulse and stated that he preferred not to describe Mr. Baggett's physical condition out of respect for his widow. He went back to check on Mr. Brumfield. During that time, Mr. Randy Colflesh, another Temple employee on his way to work, arrived on the scene of the accident. Immediately, he and Mr. Archield attempted to pull Mr. Baggett's truck away from Mr. Brumfield's igniting vehicle. Their efforts remained unsuccessful. Medical personnel arrived shortly thereafter at approximately 5:00 a.m.
Trooper Hershell Dwayne Smith with the Louisiana State Police received notification of the accident at approximately 5:00 a.m. and arrived on the site approximately eight minutes later. He testified that the vehicle's position and his investigation of the accident conclusively established that Mr. Brumfield caused the accident when his automobile crossed the road's center line to collide, head-on, with Mr. Baggett's.
Although the reasons for the accident are largely unexplained, the prevailing theory is that Mr. Brumfield fell asleep, causing his vehicle to drift into the opposing lane of travel. The trial court explained that it adhered to this theory because "unquestionably,... the point of impact was in the southbound lane of travel. The question then becomes what was the probable cause of that. Since there is no other explanation for it, including skid marks,... more probably than not, this was caused by Mr. Brumfield dozing off or going to sleep[.]" The trial court's findings appeared to be based on what Mr. Brumfield had endured the week preceding the accident.
Indeed, in November of 1996, Mr. Brumfield, a Leesville native, then residing with his wife and child in Tennessee, decided to move closer to his family, back to southern Louisiana. His uncle, Mr. Ricky Stevens, a scaffold/carpenter foreman at Basic Industry Corporation (BIC), promised him employment there as a scaffold carpenter. Mr. Brumfield scheduled his orientation with BIC on November 11, 1996, at 7:00 a.m. The Brumfields moved from Tennessee and arrived in Leesville on November 8, 1996. On November 11, 1996, Mr. Brumfield left Leesville at approximately 5:00 a.m. to promptly attend the scheduled orientation at the BIC facility located in the Lake Charles area. His work day started with a safety council meeting. Then he took and passed a test, and, as a result, he received a safety council card. Around noon, BIC's staff directed him to take a urine analysis and a hearing and pulmonary test. Thereafter, BIC issued him safety equipment and requested that he attend orientation with "Fluor Daniels," a general contractor at the Montell plant in Sulphur, Louisiana, which had sub-contracted scaffold carpentry and insulation work to BIC. Mr. Brumfield completed his orientation and agreed to go on to work his first shift. He met Mr. Stevens at the Sulphur-Wal-Mart's parking lot at 4:45 p.m. and followed him into the Montell plant, where they signed-in at 5:00 p.m. That evening, BIC assigned Mr. Frin Waynne Coward, as the safety supervisor, and Mr. A.C. Martin and Mr. Ron Meistrell, as the night superintendents. Manual labor started at 6:00 p.m. with Mr. Brumfield assigned to his uncle's crew. A regular shift would usually last until 6:00 a.m., with a "lunch break" taking place at approximately 11:30 p.m. The evidence reflects that the BIC and industrywide policy required that an employee never be assigned to work for shifts longer than sixteen hours.
It is undisputed that Mr. Brumfield worked until the "lunch break" and left without "signing-out." However, the time at which Mr. Martin requested that he be dismissed is controverted. Mr. Meistrell testified that Mr. Brumfield left the Montell plant between 11:30 and 11:40 p.m. He claims that he borrowed Mr. Coward's truck to personally drive Mr. Brumfield to his vehicle while on his way to Winners' Choice, a local diner. He contends that *335 Mr. Brumfield told him that he had to go apartment hunting.
In opposition, Mr. Stevens asserted that Mr. Martin and Mr. Coward told him to dismiss his nephew at approximately 3:50 a.m. He promptly complied and remembers seeing his nephew leave in Mr. Coward's truck shortly thereafter. Because Mr. Brumfield left before the end of the night shift, he reported the information in his foreman's log-book, where he would keep track of the time worked by his crew members. The log-book reflects that Mr. Brumfield left at 4:00 a.m. Mr. Stevens does not remember that his nephew ever complained of being tired, and he did not look impaired to drive home when released.
Mr. Brumfield suffered severe head injuries in the accident. He neither recollects the time of his dismissal, nor does he recall any of the events preceding or immediately following the accident. He testified that he had rented a place before he started working at BIC and that he would never go house hunting so late in the evening. He only remembers waking up in pain in a hospital bed. He does not know whether he fell asleep when driving, but explains that he had enough sense to stop when he felt sleepy during his twelve-hour moving drive from Tennessee.
Ms. Baggett and her three children filed suit against Mr. Brumfield and his automobile insurer, State Farm Mutual Automobile Insurance Company (State Farm), BIC, and its insurer National Union Fire Insurance Company of Pittsburgh (National). The trial court dismissed State Farm from this litigation on summary judgment. On March 22, 1999, the court granted, in part, a BIC/National filed motion for summary judgment, but it also denied it in part. Specifically, it dismissed the Baggetts' claim, alleging BIC's vicarious liability, but decided to proceed with a trial on the merits regarding the issue of BIC's direct and independent negligence.
After a bench trial held on May 19, 1999, the trial court found Mr. Brumfield to be sixty percent at fault, and BIC forty percent at fault in causing the accident. It awarded the Baggetts a total amount of $1,258,415.48. BIC and National appeal suspensively. The Baggetts answer the appeal.

BIC's VICARIOUS LIABILITY
The Baggetts assert that the trial court erred in finding BIC not vicariously liable for Mr. Brumfield's negligence on summary judgment. We review summary judgments de novo under the same criteria that the trial court adopted.[1] Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and, admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.[2] La.Code Civ.P. art. 966, charges the moving party with the burden of proving that summary judgment is appropriate. In doing so, the moving party's supporting documentation must be sufficient to establish that no genuine issue of material fact remains at stake.[3] Once the mover makes a prima facie showing that there is no genuine issue as to a material fact and that summary judgment should be granted, the burden shifts to the nonmover.[4]
Furthermore, La.Code Civ.P. art. 967 provides, in pertinent part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response by affidavits *336 or otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
The threshold question in reviewing a trial court's grant of summary judgment is whether a genuine issue of material fact remains.[5] Then, we must determine whether reasonable minds could conclude, based on the facts presented, that the mover is entitled to judgment.[6] Thus, summary judgment is apropos when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole remaining issue relates to the legal conclusion to be drawn from the facts.[7]
Facts are material if they determine the outcome of the legal dispute.[8] The determination of the materiality of a particular fact must be made in light of the relevant substantive law.[9] In the instant case, the Baggetts request that we find BIC vicariously liable for Mr. Brumfield's acts on the grounds that the accident arose out of the course and scope of his employment.
Generally, an employer is vicariously liable for the torts its employees commit in the course and scope of their employment.[10] Course of employment refers to the time and place of the tort, while scope pertains to the employment-related risk of injury.[11] The established rule is that an employee going to and from work is not acting within the course and scope of his employment.[12] Courts have fashioned exceptions to the rule when (1) the employer provides transportation that the employee uses to go to and from work, (2) the employer provides expenses or wages for the time the employee spends traveling to and from work, and (3) the employee's operation of the vehicle is incidental to, or the actual performance of, some employment responsibility.[13] The latter exception is usually triggered when the employer retains some control over the employee when in his vehicle.[14]
In the case sub judice, it is undisputed that, at the time of the accident, Mr. Brumfield was off work and on his way to his parents' home in Leesville. Our de novo review of the record does not reveal any fact remotely suggesting the application of any of the aforementioned exceptions. Clearly, BIC had no control over him after he left the Montell plant.
Nevertheless, the Baggetts urge that we find BIC vicariously liable simply because the accident occurred as a result of Mr. Brumfield's physical and mental exhaustion derived from his employment. We cannot agree with this argument. First, we found no reported case in our state which extends, so widely, the notion of vicarious liability. Second, we find the case sub judice distinguishable on its facts to that of Snowbarger v. Tri-County Elec. Coop., 793 S.W.2d 348 (Mo.1990) upon which the Baggetts rely, in that it arose in the context of a workers' compensation *337 litigation, and the employer required the employee to work eighty-six of a 100 hour-period. In the instant case, neither the Baggetts nor Mr. Brumfield set forth any competent fact showing that he was required to start working immediately after his orientation or work until 4:00 a.m. Moreover, the employer did not force Mr. Brumfield to drive after work. There were many alternatives open to him which he chose not to avail himself.
Accordingly, after reviewing the record de novo, we affirm the trial court's summary judgment on this issue.

BIC's DIRECT NEGLIGENCE
The crucial issue raised by this assignment of error is whether an employer may be liable to public highway users for failing to prevent its employees from driving home after working a twenty-one-hour shift or for failing to keep its employees from working twenty-one-hour shifts at all.
Under this theory, the trial court found BIC liable and assessed it forty percent of the fault. Because we find that, as a matter of law, BIC does not owe a duty to public highway users, such as Mr. Baggett, under the circumstances sub judice, we reverse the trial court's decision.
When determining whether a person is negligent, La.Civ.Code art. 2315 states, in part, that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Also, La.Civ.Code art. 2316 states, in part, that "[e]very person is responsible for the damage he occasions not merely by his act, but his negligence, his imprudence, or his want of skill." To establish a defendant's negligence requires proving the following elements: (1) duty, (2) breach of duty, (3) cause in fact, (4) scope of liability or protection, and (5) damages.[15]

Duty
The threshold issue is whether BIC owed Mr. Baggett a duty. In essence, the trial court imposed, upon BIC, a duty to protect public highway users, such as Mr. Baggett, by keeping its employees from driving home after working a twenty-one-hour shift and providing them with "a place to rest and get some sleep" or by keeping them from working twenty-one-hour shifts at all. BIC claims that the trial court erred.
Whether a person is bound by a duty in a particular set of circumstances is a question of law for the courts to decide.[16] When imposing the existence of a duty, courts make policy determinations in light of the unique facts of the case.[17] In the case sub judice, we must make such a determination, unaided by any Louisiana statute or jurisprudence.
We considered the persuasive jurisprudence submitted by the parties. In Faverty v. McDonald's,[18] an employee fell asleep on his way home from work, causing an accident in which he died and severely injured the plaintiff. The employer knew that two employees had recently sustained automobile accidents when falling asleep as they returned home from work. The employee was a high school student and had worked three shifts in a seventeen-hour period. His managers had the opportunity to see that he exhibited signs of fatigue. The court found that the jury could reasonably conclude that the defendant knew or should have known that working the employee so many hours would impair his ability to drive home safely.
*338 In Robertson v. LeMaster,[19] a nineteen-year-old section laborer fell asleep on his way home from work after working a twenty-five-hour shift. His vehicle collided with another owned by the plaintiff. The plaintiff sued the employer and the court found that a genuine issue of material fact existed whether the employer had the duty to guard against a foreseeable risk of harm. Nevertheless, we note that the employer's liability appeared mainly predicated on the fact that it had required the employee to work or he would be fired.
We are unimpressed with the aforementioned jurisprudence. First, we note the consistent countervailing jurisprudence which BIC cited.[20] Second, this court believes that only Mr. Brumfield had the ability to determine whether he could safely drive home after his uncle requested that he leave. BIC did not require that he work for such an extended period of time, and it had no control over his acts once he exited the plant. To find BIC liable for Mr. Brumfield's act, under these circumstances, would result in diluting the principle of individual responsibility to which we adhere in this court and in our state.
Accordingly, we reverse the trial court's decision on this issue and find that BIC should not be assessed any percentage of fault, but Mr. Brumfield shall bear 100% of the fault for causing the accident.
Our resolution of this issue pretermits discussion of the parties' other assignments of error.

CONCLUSION
Mr. Brumfield did not act within the course and scope of his employment with BIC at the time of the accident, thus, BIC is not vicariously liable for his negligence. Accordingly, we affirm this part of the trial court's decision. However, finding that, as a matter of law, BIC did not owe Mr. Baggett a duty under the circumstances, we reverse the part of the trial court's decision finding BIC directly negligent and assessing it forty percent of the fault.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Schroeder v. Board of Sup'rs of La. State Univ., 591 So.2d 342 (La.1991); Soileau v. D & J Tire, Inc., 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818, writ denied, 97-2737 (La.1/16/98); 706 So.2d 979.
[2] La.Code Civ.P. art. 966(B).
[3] Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323.
[4] Id.
[5] Kumpe v. State, 97-386 (La.App. 3 Cir. 10/8/97); 701 So.2d 498, writ denied, 98-50 (La.3/13/98); 712 So.2d 882.
[6] Id.
[7] Id.
[8] Soileau, 702 So.2d 818.
[9] Id.
[10] La.Civ.Code art. 2320; Baumeister v. Plunkett, 95-2270 (La.5/21/96); 673 So.2d 994.
[11] Russell v. Noullet, 98-816 (La.12/1/98); 721 So.2d 868.
[12] Soileau, 702 So.2d 818.
[13] Vaughan v. Hair, 94-86 (La.App. 3 Cir. 10/5/94); 645 So.2d 1177, writ denied, 95-123 (La.3/10/95); 650 So.2d 1186.
[14] See Id.
[15] Porteous v. Saint Ann's Café & Deli, 97-837 (La.5/29/98); 713 So.2d 454.
[16] Muse v. Dunbar, 97-582 (La.App. 3 Cir. 6/10/98); 716 So.2d 110, writ denied, 98-1851 (La.11/6/98); 727 So.2d 448, Phillip v. University Medical Ctr., 97-302 (La.App. 3 Cir. 4/22/98); 714 So.2d 742, writ denied, 98-2143 (La.11/13/98); 730 So.2d 938.
[17] Meany v. Meany, 94-251 (La.7/5/94); 639 So.2d 229.
[18] 133 Or.App. 514, 892 P.2d 703 (1995).
[19] 171 W.Va. 607, 301 S.E.2d 563 (1983).
[20] Pilgrim v. Fortune Drilling Co., Inc., 653 F.2d 982 (5th Cir.1981), Jenkins v. Kemlon Prod., 923 S.W.2d 224 (Tex.App.1996), Lesser v. Nordstrom, 1998 WL 480832 (E.D.PA. 1998).