Duge v. Union Pacific RR



NUMBER 13-99-642-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

____________________________________________________________________


MAURINE DUGE AND HOWARD DUGE, Appellants,


v.


UNION PACIFIC RAILROAD CO., Appellee.

____________________________________________________________________


On appeal from the 36th District Court of Bee County, Texas.

____________________________________________________________________


O P I N I O N

Before Justices Hinojosa, Yañez, and Chavez (1)

Opinion by Justice Hinojosa


This is an appeal from an order granting summary judgment to appellee, Union Pacific Railroad Co. In a single issue,
appellants, Maurine Duge and Howard Duge, contend the trial court erred in granting appellee's motion for summary
judgment because a genuine issue of material fact exists regarding whether Union Pacific exercised control over its
employee, Marcelino P. Garcia, while he was incapacitated due to fatigue. We affirm.

A. Background and Procedural History


The facts are undisputed. Edward Duge, husband of Maurine and father of Howard, was killed at approximately 12:46 p.m.
on October 22, 1997, when his truck was struck from behind by a truck driven by Garcia. Garcia, a long-time Union
Pacific employee, had worked a regular work day on October 21, then worked all night at the site of a train derailment.
Garcia slept very little that night. (2) After being on the job for some twenty-seven hours, he was released from the
derailment site at approximately 10:45 a.m. on October 22, 1997. His supervisor dropped him off at the Union Pacific
office where Garcia's personal truck was parked. 

After leaving the Union Pacific office, Garcia stopped at a gasoline station to fill up his truck. He visited with a friend
there for an hour to an hour and a half. At about 12:00 or 12:15 p.m., Garcia decided to drive to his home some fifty miles
away. The fatal accident occurred during this trip. A witness to the accident reported that Garcia's truck passed her van on
the left, moved back into the right-hand lane, then struck the rear of Duge's truck, causing it to overturn.

Appellants filed suit against Union Pacific in the District Court of Bee County. In their First Amended Petition, appellants
alleged that: (1) Duge's death was caused by Garcia's negligence, (2) Union Pacific had knowledge of Garcia's incapacity
due to fatigue at the time of his release from work, and (3) Union Pacific exercised control over Garcia by "placing him on
the highway to the foreseeable peril of other travelers." (3)

In its motion for summary judgment, Union Pacific asserted there was no genuine issue of material fact regarding whether
Union Pacific "affirmatively exercised control over Garcia because of an alleged incapacity of Garcia." The trial court
granted appellee's motion. This appeal ensued.

B. Standard of Review

When reviewing a traditional summary judgment brought under Texas Rule of Civil Procedure 166a, an appellate court
must follow these well-established rules:

 


 the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as
a matter of law;


 


 in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true; and


 


 every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the
nonmovant.



American Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Nixon v. Mr. Property Mgmt. Co., 690 S.W.2d
546, 548-49 (Tex. 1985); see also Tex. R. Civ. P. 166a. A defendant's motion for summary judgment should be granted if
he disproves at least one essential element of each of the plaintiff's causes of action, or if he establishes all the elements of
an affirmative defense as a matter of law. Grinnell, 951 S.W.2d at 425; Science Spectrum, Inc. v. Martinez, 941 S.W.2d
910, 911 (Tex. 1997). When a defendant moves for summary judgment on an affirmative defense, he must prove each
element of his defense as a matter of law, leaving no issues of material fact. Ryland Group, Inc. v. Hood, 924 S.W.2d 120,
121 (Tex. 1996). The plaintiff, as the non-movant, has no burden of proof unless the defendant proves conclusively all
elements of its affirmative defense. Id.

We review the evidence in the light most favorable to the respondent against whom the summary judgment was rendered,
disregarding all contrary evidence and inferences. Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997);Zapata, 997 S.W.2d at 747; Connell v. Connell, 889 S.W.2d 534, 537 (Tex. App.-San Antonio 1994, writ denied).
Evidence favoring the movant's position will not be considered unless it is uncontradicted. Great Am. Reserve Ins. Co. v.
San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). If a summary judgment is granted generally, without
specifying the reason, it will be upheld if any ground in the motion for summary judgment can be sustained. Carr v.
Brasher, 776 S.W.2d 567, 569 (Tex. 1989); Weakly v. East, 900 S.W.2d 755, 758 (Tex. App.-Corpus Christi 1995, writ
denied); Benavides v. Moore, 848 S.W.2d 190, 192 (Tex. App.-Corpus Christi 1992, writ denied).

C. Duty


The common law doctrine of negligence consists of three elements: (1) a legal duty owed by one person to another; (2) a
breach of that duty; and (3) damages proximately resulting from the breach. Van Horn v. Chambers, 970 S.W.2d 542, 544
(Tex. 1998); Praesel v. Johnson, 967 S.W.2d 391, 394 (Tex. 1998); Greater Houston Transp. Co. v. Phillips, 801 S.W.2d
523, 525 (Tex. 1990); El Chico Corp. v. Poole, 732 S.W.2d 306, 311 (Tex. 1987). The plaintiff must establish both the
existence of a duty and the violation of that duty to establish liability in tort. Greater Houston Transp., 801 S.W.2d at
525;El Chico, 732 S.W.2d at 311. The existence of a duty is a threshold question of law. Van Horn, 970 S.W.2d at 544;
St. John v. Pope, 901 S.W.2d 420, 424 (Tex. 1995); Bird v. W.C.W., 868 S.W.2d 767, 769 (Tex. 1994). The nonexistence
of a duty ends the inquiry into whether negligence liability may be imposed. Van Horn, 970 S.W.2d at 544; St. John, 901
S.W.2d at 424; Graff v. Beard, 858 S.W.2d 918, 919 (Tex. 1993). At issue here is the duty, if any, of Union Pacific to
control Garcia's activities after he left the Union Pacific workplace. 

The question of duty turns on the foreseeability of harmful consequences, which is the underlying basis for negligence.
Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 296 (Tex. 1983). Foreseeability means that a person of ordinary
intelligence should have anticipated the dangers that his negligent act created for others. Missouri Pac. R.R. Co. v.
American Statesman, 552 S.W.2d 99, 103 (Tex. 1977). In determining the question of duty, the court will consider several
interrelated factors, including the foreseeability of the risk, and likelihood of injury weighed against the social utility of the
actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on
the defendant. Greater Houston Transp., 801 S.W.2d at 525.

Generally, there is no duty to control the conduct of third persons. Greater Houston Transp., 801 S.W.2d at 525. However,
this general rule does not apply when a special relationship exists between the actor and a third person which imposes a
duty upon the actor to control the third person's conduct. Id. (citing Restatement (Second) of Torts § 315(a)(1965)). In the
absence of a relationship between the parties giving rise to the right of control, a person is under no legal duty to control the
conduct of another, even if there exists the practical ability to do so. Graff, 858 S.W.2d at 920. 

Appellants base their claim on the duty imposed on employers in Otis Eng'g Corp. v. Clark, 668 S.W.2d 307, 311 (Tex.
1983):

when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to
take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the
employee from causing an unreasonable risk of harm to others. Such a duty can be analogized to cases in which a
defendant can exercise some measure of reasonable control over a dangerous person when there is a recognizable great
danger of harm to third persons. Additionally, we adopt the rule from cases in this Restatement area that the duty of the
employer or one who can exercise charge over a dangerous person is not an absolute duty to insure safety, but requires only
reasonable care.



Id. (citations omitted). Liability was imposed in Otis "because of the employer's negligent exercise of control over the
employee." Greater Houston Transp., 801 S.W.2d at 526 (emphasis in original). The duty in Otis arose from an
affirmative act which had foreseeable, adverse consequences. Jenkins v. Kemlon Prod. & Dev. Co., 923 S.W.2d 224, 226
(Tex. App.-Houston [14th Dist.] 1996, no writ). 

In Otis, the employer discovered that an employee, who had a history of drinking on the job, was too intoxicated to safely
perform his job. Otis, 688 S.W.2d at 308. In fact, the employee was so drunk that he was "slurring his words . . . and
weaving and bobbing on his stool and about to fall into the machine." Id. The employee's supervisor told him to go home,
and escorted him to his car. Id. A short time later, the intoxicated employee caused a fatal traffic accident. Id.

The facts in the instant case are quite different. While Garcia had been on the job some twenty-seven hours, he testified
that he did not look or feel tired. In fact, he told his supervisor and co-workers, "I feel so good this morning, that, you
know, I could keep on working." He felt well enough to visit a friend before heading home. Garcia's condition, when
taken to his truck, was very different from that of the Otis employee, who was so intoxicated that he could not sit up
straight. Garcia's condition, therefore, does not rise to the level of incapacity described in Otis.

Furthermore, Otis requires that an employer have knowledge of the employee's incapacity, and then exercise control over
the incapacitated employee. Otis, 668 S.W.2d at 309-11; Jenkins, 923 S.W.2d at 226. Even if we assume that fatigue was
a factor in the accident, Garcia did not know the extent of his own fatigue. His employer cannot be charged with such
knowledge.

Appellants cite no Texas case law, and we have found none, imposing liability on an employer for damages caused by a
fatigued employee driving home after work. However, there is case law declining to impose such liability in similar
circumstances. See, e.g., McNeil v. Nabors Drilling USA, Inc, 36 S.W.3d 248, 250-51 (Tex. App.-Houston [1st Dist.]
2001, no pet. h.) (fatigued employee decided to drive home instead of sleeping in employee quarters, and caused
accident);Jenkins, 923 S.W.2d at 227 (employee who had worked long hours stopped to drink beer and socialize, then
caused accident); J & C Drilling Co. v. Salaiz, 866 S.W.2d 632, 638-39 (Tex. App.-San Antonio 1993, no writ) (fatigued
employee on a food break caused an accident); Moore v. Times Herald Printing Co., 762 S.W.2d 933, 934-35 (Tex.
App.-Dallas 1988, no writ) (employee worked twenty hours before causing accident).

Appellants argue that Texas should recognize a duty under these circumstances. In support of this argument, appellants cite
a West Virginia case cited by the Otis majority. In Robertson v. LeMaster, 301 S.E.2d 563, 564 (W.Va. 1983), a railroad
worker was required to work twenty-seven hours straight at a wreck site. After insisting several times that he was too tired
to work, Le Master was released from work and was driven to his car by a railroad employee. Id. at 564-65. On the way
home, LeMaster caused an accident. Id. The Supreme Court of Appeals of West Virginia held that the railroad could be
liable under these circumstances. Id. at 569. The court also held that the railroad's liability resulted from its affirmative
conduct in driving him to his vehicle and requiring him to drive home when he was obviously exhausted. Id.

The facts in Robertson are different from those of the instant case. In Robertson, the employer sent LeMaster home
because he was too fatigued to work. These facts are very similar to Otis, where the employee was sent home because he
was too intoxicated to work. In the instant case, Garcia worked until the job was over, and gave no indication that he was
fatigued. We hold Robertson inapplicable to this case.

In their supplemental brief, appellants also cite Ianni v. Loram Maint. of Way, Inc., 16 S.W.3d 508 (Tex. App.-El Paso
2000, pet. denied), a recent case in which the appellate court reversed a summary judgment in favor of the employer. In
that case, Loram's employees, who were crew members on a large grinding machine used to repair railroad tracks, began
using crystal methamphetamine on the job to stay awake during the long work hours. Id. at 511. One of these employees,
Tingle, who was described as "strung out" and "out of it," was slurring his speech, no longer walking upright, had dilated
pupils and glassy eyes, and looked exhausted. Id. After working a fourteen-hour shift, he returned to the motel provided
by his employer and threatened his wife with a gun. Id. She ran outside screaming and was assisted by Ianni, a police
officer. Id. Tingle shot Ianni, seriously injuring him. Id. In reversing the summary judgment, the El Paso Court of
Appeals found that Tingle's supervisors knew of his incapacity at the time of the shooting and held there was a fact
question regarding whether the employer performed an affirmative act of control. Id. at 520-23.

Appellants also cite Peavy v. Texas Home Mgt., Inc., 7 S.W.3d 795 (Tex. App.-Houston [1st Dist.] 1999, pet. granted). 
InPeavy, a woman was murdered by a man on a weekend leave from his court-mandated residence at a home maintained by
a private company under a contract with the Texas Department of Human Services. Id. at 796-97. The First Court of
Appeals reversed a summary judgment in favor of the home, holding that the Otis duty applied to the special relationship
between the home and the patient. Id. at 799-800. The court found there was a fact question as to the reasonableness of the
facility's conduct in letting the patient leave on a weekend pass when it knew his history of violent behavior. Id. at 800.

Because Garcia was not obviously impaired like the employee in Ianni, and because there is no allegation that Union
Pacific had any special knowledge that Garcia was dangerous as in Peavy, we conclude they do not apply to this case. We
further conclude Union Pacific did not exercise control over an incapacitated employee who posed a foreseeable risk to
others.

We hold Union Pacific had no duty to control the actions of its employee, Garcia, after he left the workplace. Therefore,
the trial court did not err in granting appellee's motion for summary judgment. Appellants' sole issue is overruled.

We affirm the trial court's order granting appellee's motion for summary judgment. 

FEDERICO G. HINOJOSA

Justice



Publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this the

19th day of July, 2001.

1. Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. The evidence regarding how much sleep Garcia got that night is conflicting. Garcia estimated he got from about
forty-five minutes to about three hours of sleep in intervals.

3. Appellants also alleged, in the alternative, that Garcia was in the course of his employment with Union Pacific at the
time of the accident. However, appellants explicitly waived this allegation in their response to Union Pacific's motion for
summary judgment.